OPINION
{¶ 1} Appellant, Charles Strychalski, appeals from a Carroll County Common Pleas Court, Juvenile Division decision terminating his parental rights and granting appellee, the Carroll County Department of Job and Family Services, permanent custody of his minor daughter, Anastasia.
 {¶ 2} On August 12, 2002, appellee filed a complaint in the trial court alleging that Anastasia, then age 11 months, was a neglected and dependent child and requesting temporary custody. At the time, Anastasia lived with appellant, her mother, Cindy Frazee, and Cindy's two other children, Anastasia's half-siblings. All three children were alleged to be neglected and dependent.
 {¶ 3} The court ordered that Anastasia be placed in appellee's temporary custody that day. The court held a hearing on October 4, 2002, where it adjudicated Anastasia to be a neglected and dependent child. The court did not state in its judgment entry on what evidence it based its conclusion. But there is evidence in the record that appellant was charged with domestic violence for causing or attempting to cause physical harm to Cindy and Anastasia on July 6, 2002. Additionally, the record shows that a domestic violence protection order was issued against appellant to stay away from Cindy, Anastasia, and the other children. Furthermore, the record indicates that both Cindy and appellant suffered from drug addictions and mental health problems.
 {¶ 4} Appellant failed to appear at the hearing. Appellee filed a case plan, which appellant signed while in jail, setting out various goals for appellant to complete. On June 23, 2003, appellee filed a motion for permanent custody of Anastasia. It alleged that Cindy had abandoned Anastasia and appellant had not attempted to complete his case plan goals. The court held a hearing on the motion on October 3, 2003. In its October 31, 2003 judgment entry, the court concluded that Cindy abandoned Anastasia and Anastasia cannot and should not be placed with appellant in the foreseeable future. The court found that appellant had not completed any of his case plan goals or parenting classes. It also found that there was no emotional bond between Anastasia and either of her parents. And it determined that Anastasia's best interests required some permanency in her life, which could only be had by the order of permanent custody. Therefore, the court granted appellee's motion and terminated all parental rights.[1] Appellant filed his timely notice of appeal on November 26, 2003.
 {¶ 5} Appellant raises two assignments of error, the first of which states:
 {¶ 6} "The trial court's finding that the child cannot and should not in the foreseeable future be placed with the appellant-father, pursuant to O.R.C. § 2151.414(E)(1) because he had, despite diligent efforts by the agency, failed to remedy the conditions that led to the initial removal of the minor child, was not supported by clear and convincing evidence."
 {¶ 7} Appellant argues that the evidence did not support the court's finding that it was in Anastasia's best interest to grant permanent custody to appellee. Additionally, he argues that appellee failed to demonstrate that one of the factors set out in R.C. 2151.414(B)(1) applied to this case. He claims the transcript demonstrates that he had significant interaction with Anastasia during the pendency of this matter, she has not been in appellee's custody for the required period of time to grant permanent custody, she can have permanency without granting custody to appellee, and the factors set out in R.C.2151.414(E)(7) through (11) do not apply. He contends that he has substantially remedied the problems appellee identified for him at the outset of this case. He points to certain testimony to back up this contention including: (1) he had no instances of domestic violence (Tr. 47); (2) he had no documented "dirty" drug or alcohol screens since his release from prison in December 2002 (Tr. 24, 59, 90); (3) he has effectively managed his mental and physical health issues (Tr. 89-90); and (4) he has a stable home where he can care for Anastasia (Tr. 91). Additionally, appellant contends that though the court held against him the fact that he never attended parenting classes, these classes were not part of his case plan. (Tr. 50-51).
 {¶ 8} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990),52 Ohio St.3d 155, 157, citing Stanley v. Illinois (1972),405 U.S. 645, 651. However, this right is not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 9} According to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 10} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 11} "* * *
 {¶ 12} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
 {¶ 13} Thus, before granting a children services agency permanent custody, the court must evaluate the child's best interests and whether the child should not or cannot be placed with either parent within a reasonable amount of time using the factors set out in R.C. 2151.414(D) and R.C. 2151.414(E).
 {¶ 14} R.C. 2151.414(B)(1) sets out another way for a court to grant permanent custody to an agency. It provides:
 {¶ 15} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 16} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 17} "(b) The child is abandoned.
 {¶ 18} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 19} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." R.C.2151.414(B)(1).
 {¶ 21} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion.Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 22} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 23} Both R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1) require the court to first find that permanent custody to the agency would be in the child's best interest. R.C. 2151.414(D) provides factors the court is to consider in determining the child's best interest. They include, but are not limited to:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 29} As to the best interest factors, the evidence reveals the following.
 {¶ 30} No evidence was presented as to Anastasia's interaction with her half-siblings or any relatives. Sarah Ricklic, appellant's social worker at children services, testified that appellant's interaction with Anastasia has been positive in some manner. (Tr. 58). However, she stated that since appellant always brings Anastasia gifts, she associates him with getting toys. (Tr. 58). She stated that appellant does not have quality interaction with his daughter. (Tr. 58). For instance, a lot of his visitation time he spends just sitting back and watching her play as opposed to interacting with her. (Tr. 58). But she did testify that Anastasia reacts positively towards appellant. (Tr. 58). Appellant testified that he has an emotional bond with Anastasia. (Tr. 92-93). He stated that she runs up to him when he comes to visit and that he always brings her toys and clothes. (Tr. 93). Appellant testified that he loves his daughter and that he feels they become closer every time he sees her. (Tr. 93). Finally, the GAL report stated that Anastasia is strongly bonded to her foster family.
 {¶ 31} No evidence was presented regarding Anastasia's wishes, presumably due to her young age.
 {¶ 32} Anastasia's custodial history shows that she spent her first eleven months in the care of her mother. Appellant lived with them during at least a portion of that time. Appellee removed Anastasia from her home on August 12, 2002 and Anastasia was adjudicated dependent and neglected on October 4, 2002. Since that time, Anastasia has been in appellee's custody in foster care.
 {¶ 33} The court found that Anastasia's best interests require some permanency. The GAL report stated that while appellant has been enthusiastic about visitation, he has had no enthusiasm for completing his case plan goals and has not invested effort into trying to complete them.
 {¶ 34} None of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to appellant.
 {¶ 35} In addition to the statutory factors, other evidence was adduced as to Anastasia's best interests. The GAL opined that granting appellee permanent custody was in Anastasia's best interests.
 {¶ 36} Ricklic, the social worker, testified that appellee took Anastasia from her home due to a domestic violence incident where appellant allegedly grabbed her by the neck and had a "tussle" with her. (Tr. 31-32). She also testified that appellant did not appear at Anastasia's initial hearing because he was in jail serving a sentence for receiving stolen property. (Tr. 33).
 {¶ 37} Evidence was further presented that appellant has had a problem with cocaine in the past. Lori Miller, a counselor at an alcohol and addiction program who saw appellant briefly, testified that appellant came to the program upon a referral. (Tr. 13). He was assessed and it was determined that he should attend a chemical dependency group. (Tr. 14). Appellant only attended four sessions and then could not attend because he was incarcerated. (Tr. 14-15). Miller testified he began again after he was released in December 2002. (Tr. 15). At this time, appellant identified co-dependency issues with regard to Anastasia's mother. (Tr. 16). He told Miller that he enabled Anastasia's mother to use drugs. (Tr. 26). He was to attend individual and couples' counseling. (Tr. 16). He attended a few sessions and the sessions just dissipated. (Tr. 17, 20). Miller testified that she had knowledge of appellant's drug tests where he tested positive for cocaine on two occasions and still denied that he used cocaine. (Tr. 17-18). For instance, appellant told Miller someone had put cocaine in his coffee, which resulted in a positive drug test. (Tr. 18). And Miller reported that appellant told her he had picked up a female hitchhiker, with whom he had a sexual encounter, and she might have been on something that got into his system resulting in another positive drug test. (State's Exh. A). These drug tests occurred early in 2002. (Tr. 18-19).
 {¶ 38} Additionally, Ricklic testified appellant had three main case plan goals dealing with: (1) anger management and respecting his temporary restraining order; (2) going to Community Mental Healthcare and attending individual counseling for depression; and (3) attending a substance abuse assessment and following through with recommendations. (Tr. 67-68). She stated that appellant failed to complete any of his goals. (Tr. 38, 52). Appellant even admitted that he did not complete any of the goals. (Tr. 85). Furthermore, Ricklic and appellant testified that while it was not identified as a part of the case plan, they agreed that he would attend parenting classes in order to seriously work towards placing Anastasia in his care. (Tr. 50, 82). Ricklic set appellant up for the classes on two occasions and he failed to attend. (Tr. 82).
 {¶ 39} Both Ricklic and appellant testified regarding appellant's visitation with Anastasia. Ricklic testified that she set up a visitation schedule for appellant in December, 2002. (Tr. 40). She stated that appellant's first visit since the July/August domestic violence incident was on December 27, 2002. (Tr. 40). By the date of the hearing, October 3, 2003, 30 visits were scheduled of which appellant attended 19 for the whole time allotted. (Tr. 41). He also either came late or left early for four visits, missing about a half hour of the time allotted. (Tr. 41). Appellant also canceled six visits and simply did not show up for one. (Tr. 41). Appellant gave excuses such as car problems and doctors' appointments for canceling. (Tr. 41). Ricklic also testified that appellant told her he could not make the visits scheduled in January and February 2003, because he had a recurring back problem and was home flat on his back. (Tr. 48). Appellant agreed with Ricklic's testimony about his visitation record. (Tr. 85).
 {¶ 40} And appellant testified about his health issues. He stated that he takes Zoloft for depression. (Tr. 75). He also stated he has been on disability since he had open-heart surgery in 1997 or 1998. (Tr. 91). And appellant testified he has back problems for which he has ongoing treatment. (Tr. 90).
 {¶ 41} Furthermore, appellant testified that he has supplied drugs for Anastasia's mother. (Tr. 81). He stated that he did so to "keep the peace" between them and to keep her off the streets. (Tr. 101).
 {¶ 42} Given this testimony, the court had clear and convincing evidence on which to conclude that it was in Anastasia's best interest to grant permanent custody to appellee. The evidence shows that while appellant has exercised a good portion of his visitation, he has not completed any of his case plan goals or the agreed upon parenting classes. Furthermore, appellant did miss seven visits with Anastasia and either came late or left early for four more. Additionally, while appellant argues he was not required to complete parenting classes as part of his case plan, he admitted that he agreed with Ricklic to do so in order to seriously work towards gaining custody of his daughter. (Tr. 82). And he admitted that he failed to complete the classes or complete any other case goal. (Tr. 82, 85). One can reasonably conclude that if appellant was serious about gaining custody of his daughter, he would work as hard as possible to complete the case plan goals and spend as much time as he was permitted with her. Thus, the court did not abuse its discretion in finding that Anastasia's best interests would be served by granting permanent custody to appellee.
 {¶ 43} After determining the child's best interest, both R.C.2151.353(A)(4) and R.C. 2151.414(B)(1) require the court to consider whether the child should or cannot be placed with either parent in the foreseeable future or whether another circumstance exists such as abandonment by the parent or the child having been in the agency's custody for 12 of 22 months. When determining whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents pursuant to R.C. 2151.353, the court must consider all relevant evidence and make a finding as to if one or more of the circumstances set out in R.C. 2151.414(E) exist. If the court finds that one or more of the enumerated circumstances exist, it shall enter a finding that the child cannot or should not be placed with either parent within a reasonable time. R.C. 2151.414(E). Those circumstances include:
 {¶ 44} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).
 {¶ 45} The trial court found that R.C. 2151.414(E)(1) exists in this case. It stated, "[i]n spite of reasonable efforts of [appellee], the father has completed none of the case plan goals, nor the parenting class arranged for him." (Oct. 31, 2003 judgment entry). Thus, the court found that Anastasia cannot and should not in the foreseeable future be placed with appellant. (Oct. 31, 2003 judgment entry). As discussed above, appellant admittedly failed to meet any of his case plan goals or the parenting classes. Additionally, Ricklic testified that she set appellant up for parenting classes, got him started with drug and alcohol counseling and mental health care, gave him referrals for counseling when he moved, and scheduled visitation for him. (Tr. 39-40, 50-51, 54). Thus, the evidence supports the court's findings pursuant to R.C. 2151.414(E)(1).
 {¶ 46} R.C. 2151.353(A)(4) provides that if a child is adjudicated an abused, neglected, or dependent child, the court may make an order of disposition committing the child to the permanent custody of a public children services agency, if the court determines in accordance with R.C. 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with R.C. 2151.414(D) that the permanent commitment is in the best interest of the child. And R.C.2151.414(B)(1)(a) provides the court may grant permanent custody of a child to a movant if the court determines at a hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 47} Clear and convincing evidence supports the court's finding that it is in Anastasia's best interest to grant permanent custody to appellee and that Anastasia cannot and should not be placed in appellant's custody in the foreseeable future. Consequently, the court did not abuse its discretion in granting appellee permanent custody of the child. Thus, appellant's first assignment of error is without merit.
 {¶ 48} Appellant's second assignment of error states:
 {¶ 49} "The trial court's finding that the minor child had been in the temporary custody of the carroll county department of job and family services for twelve or more months of a consecutive twenty-two month period was not supported by clear and convincing evidence."
 {¶ 50} Appellant asserts that on the day of the permanent custody hearing, Anastasia had not been in appellee's temporary custody for 12 or more months of a consecutive 22-month period as is required by R.C. 2151.414(B)(1)(d). Therefore, he contends the court could not grant permanent custody to appellee.
 {¶ 51} R.C. 2151.414(B)(1) provides that "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home." Anastasia was removed from her home on August 12, 2002. Sixty days after this date is October 11, 2002. The court adjudicated her on October 4, 2002, which is earlier than 60 days after the date of removal and is therefore the date used to determine the length of time in temporary custody.
 {¶ 52} According to R.C. 2151.413(A), an agency with temporary custody of a child "may" file a motion requesting permanent custody. In re Nice (2001), 141 Ohio App.3d 445, 458. But if the child has been in temporary custody for 12 or more months of a consecutive 22-month period, the agency "shall" file a motion requesting permanent custody. Id.; R.C. 2151.413(D)(1).
 {¶ 53} Appellee filed its motion for permanent custody on June 23, 2003. At that time, Anastasia had not yet been in appellee's custody for 12 months. Thus, under R.C.2151.414(B)(1)(a), the court had to find by clear and convincing evidence that Anastasia cannot be placed with either parent within a reasonable time or should not be so placed. It was not required to find that she had been in appellee's care for 12 months out of a consecutive 22-month period.
 {¶ 54} Since Anastasia had not yet been in appellee's custody for 12 months, the court was required to find one of the following:
 {¶ 55} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 56} "(b) The child is abandoned.
 {¶ 57} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody." R.C.2151.414(B)(1).
 {¶ 58} The court made the finding with regard to appellant in compliance with R.C. 2151.414(B)(1)(a), as discussed in appellant's first assignment of error. The court also found that Anastasia's mother had abandoned her. These findings, coupled with the court's finding that it was in Anastasia's best interests to grant permanent custody to appellee, were sufficient to support its grant of permanent custody. Nice,144 Ohio App.3d at 458-459. Thus, appellant's second assignment of error is without merit.
 {¶ 59} For the reasons stated above, the trial court's decision is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.
[1] While the court found that Anastasia's mother had abandoned her, the mother is not a party to this appeal.