OPINION *Page 2 
{¶ 1} Appellant, Lizzie Goyden (formerly known as Lizzie Sullivan), appeals the decision of the Ashland County Court of Common Pleas, Juvenile Division, granting legal custody of her eight-year-old daughter, Elisha Sullivan, to her natural father, Walter Sullivan ("Appellee").
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and Appellee were married in 1993. One child, Elisha (DOB: 05/04/97) was born of the marriage.
 {¶ 3} In March of 2000, the parties divorced in Tuscarawas County and a Shared Parenting Plan was approved by the court.
 {¶ 4} Over time, Elisha gradually resided with her mother but had continued contact with her father.
 {¶ 5} In December 2002, Appellant married Michael Goyden. Two children were born of the marriage: Jeremiah (DOB: 12/21/03) and Steven (DOB: 01/09/06).
 {¶ 6} Between June, 2005 and January 2006, Michael Goyden sexually abused Elisha at the Goyden residence in Loudenville, Ohio. On February 1, 2006 he was taken into custody by the police and subsequently charged and convicted of rape.
 {¶ 7} Elisha and Jeremiah were removed from the Goyden residence by Appellee Ashland County Department of Job and Family Services (ACJFS) on February 1, 2006. A Shelter Care hearing was held on February 2, 2006. The trial court then ordered that all three children be placed in Shelter Care and in the temporary custody of the ACJFS. A Guardian Ad Litem, Howard Glick, was appointed for the children. *Page 3 
 {¶ 8} The trial court conducted an initial hearing on February 8, 2006 upon the complaints of ACJFS that Elisha was an abused child pursuant to R.C. 2151.031(A) and all three children were dependent children pursuant to R.C. 2151.04(C). The trial court ordered that the children remain in the custody of ACJFS.
 {¶ 9} On April 10, 2006 pleas of admissions were entered by Appellant and Mr. Goyden to the complaints of ACJFS. Thus, the trial court found the children were abused and/or dependent children pursuant to R.C.2151.04(C) and 2151.04(D). The trial court proceeded to a dispositional hearing on the complaints regarding Jeremiah and Steven. Custody of the boys was returned to Appellant with protective supervision by ACJFS, along with a case plan. At that time, the trial court was also informed that while in foster care, Elisha had engaged in inappropriate sexual behavior with two other foster children (two four-year-old boys). Elisha was moved to a different foster care placement, allowed only supervised visits with her step-brothers and remained in the custody of ACJFS. During that time, she also had supervised visits with her father, Appellee.
 {¶ 10} Appellee was also present for the April 10th
hearing and subsequently filed an Amended Motion for Legal Custody on April 12, 2006.
 {¶ 11} On May 15, 2006, the trial court conducted a dispositional hearing pursuant to R.C. 2151.353 on ACJFS's complaint involving Elisha. The trial court also heard the Amended Motion for Legal Custody filed by Appellee on that day, as one of the orders of disposition available to the trial court under R.C. 2151.353 (A) is to award legal custody to either parent of the abused/dependent child who has filed a motion requesting legal custody. R.C. 2151.353(A)(3). *Page 4 
 {¶ 12} At the dispositional hearing, the trial court heard the testimony of Dawn Palmer, a social worker investigator with ACJFS; Janeille Ditlevson, a caseworker with ACJFS; Patricia Cargnel, the paternal grandmother of Elisha and mother of Appellee; Appellee himself; Holly Shonk, fiancé living with Appellee; Angela Webb, close friend of Appellant; and Appellant herself. The trial court also conducted an in-camera interview with Elisha and considered the report of the Guardian Ad Litem
 {¶ 13} On August 24, 2006, the trial court issued a detailed opinion granting legal custody of Elisha to Appellee, pursuant to R.C.2151.353(A)(3) and also placed her under protective supervision orders pursuant to R.C. 2151.353(A)(1).
 {¶ 14} It is from this opinion and judgment entry that Appellant appeals and raises the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 15} "I. THE TRIAL COURT ERRED IN THAT ITS DISPOSITION WAS AGAINST THE WEIGHT OF THE EVIDENCE AND WAS NOT IN THE BEST INTERESTS OF THE MINOR CHILD, ELISHA SULLIVAN.
 {¶ 16} "II. THE TRIAL COURT ERRED IN FAILING TO ORDER A COMPREHENSIVE REUNIFICATION PLAN CONTRARY TO STATUTORY MANDATED REQUIREMENTS."
 I. {¶ 17} Appellant first urges this Court to find that the juvenile court abused its discretion in awarding custody of Elisha to her natural father.
 {¶ 18} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. In re Brown (2001), 42 Ohio App.3d 193,198. An abuse of *Page 5 
discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} We reiterate that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. In the Matter of the Rossantelli Children, Delaware County App. Case No. 01CAF12072, 2002-Ohio-2525. The trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. Id., citation omitted.
 {¶ 20} If a juvenile court's decision regarding a child's best interest is not supported by competent, credible evidence, then it is unreasonable and we may reverse it. In re Nice (2001),141 Ohio App.3d 445, 455. A determination of a child's best interest remains the primary standard to be applied in custody cases. In re Pryor (1993),86 Ohio App.3d 327, 332.
 {¶ 21} Appellant insists that the evidence at trial established that return of Elisha to her mother was in Elisha's best interest. She further contends that Appellee had a previous incident of domestic violence against Elisha and therefore the trial court's placement of Elisha, a victim of sexual abuse, with Appellee placed her at a greater risk of revictimization.
 {¶ 22} However, in reviewing the totality of circumstances presented at trial, we find Appellant's contentions without merit.
 {¶ 23} Specifically, the evidence at trial demonstrated that Appellant had failed to adequately protect Elisha from sexual abuse by her step-father and, in fact, was tragically indifferent to her daughter's situation. *Page 6 
 {¶ 24} "Mrs. Goyden spoke to Mr. Goyden about those incidents and implemented rules apparently for Mr. Goyden within the home, although some of those rules were actually directed to the seven or eight-year-old child. For example, she was not to wear a nightgown in the home. Mrs. Goyden took no steps to remove Mr. Goyden from the home and did not take sufficient steps to protect the child from harm."Trial Court, Opinion and Judgment Entry, dated August 24, 2006,p. 3.
 {¶ 25} In reaching this conclusion, the trial court heard testimony at the dispositional hearing, from Ms. Palmer. Ms. Palmer stated that "[Elisha] was not allowed to wear her nightgown around the house. She was to be fully clothed when she was walking about the house except for while she was in her bedroom sleeping." Tr. at p. 24. Further, "[Michael Goyden] was sleeping in the basement, now." Id. at p. 25.
 {¶ 26} The trial court also heard evidence that Appellant could not provide a stable home environment. Ms. Ditlevson testified:
 {¶ 27} "At this point, in my opinion, Ms. Goyden, is overwhelmed by a lot of things, and then also looking at the history, I believe (inaudible) sexual abuse, I believe that Ms. Goyden needs to have the stability with her residence and then also continued evidence that she'll be willing to be vigilant to provide for her children in all areas." T. at p. 70.
 {¶ 28} The evidence further demonstrates that Appellant has very little income, a sparse employment record, and is now a single parent of two small boys due to her husband's incarceration. The record also demonstrates that the Goyden family relocated frequently and that Elisha had attended several different schools while living with her mother. There were also safety concerns that Elisha may attempt to act out *Page 7 
sexually towards her younger step-brothers due to the incidents that occurred while she was in foster care.
 {¶ 29} Appellee, on the other hand, has a relatively stable life. Elisha is his only child, he is employed as a welder and his employer is agreeable to a flexible work schedule to accommodate Elisha's needs. Appellee is in a long-term relationship with Ms. Shonk, and Elisha enjoys a good relationship with Ms. Shonk and also with her paternal grandmother, Ms. Cargnel, who lives very close to Appellee.
 {¶ 30} Appellee admitted to an incident in 2003 wherein he struck Elisha on the leg after she had hit him in the eye. Appellee received counseling and visitation with Elisha was reinstated after three months. There is no indication that any similar incidents occurred again.
 {¶ 31} Reviewing the record and the totality of circumstances, we find that the juvenile court's decision regarding the best interests of Elisha was supported by competent, credible evidence. The trial court did not abuse its discretion when it determined that the best interests of Elisha were served by awarding legal custody to her father.
 {¶ 32} Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 33} In Appellant's second assignment of error, she claims the trial erred by failing to order a comprehensive reunification plan pursuant to R.C. 2151.412 upon awarding legal custody to Appellee under R.C.2151.353(A)(3). *Page 8 
 {¶ 34} It is undisputed that the trial court ordered a case plan for Elisha as required by R.C. 2151.353 (D) and 2151.412, in both the dispositional Order and in a journalized entry on September 1, 2006. The Order states as follows:
 {¶ 35} "Therefore, pursuant to Section 2151.353(A)(3) and (A)(1) of the Ohio Revised Code, the Court does order that Walter Sullivan, the father of the child, Elisha Sullivan, be and hereby is designated as the residential parent and legal custodian of the child. Provided, however, that the child is placed under a Protective Supervision Order with the Ashland County Department of Job and Family Services. The specific Protective Supervision Orders shall include:
 {¶ 36} "A. The child's father, Walter Sullivan, shall provide a stable, suitable, and appropriate home and environment for the child, Elisha Sullivan, and shall do all things necessary to see to her day-to-day needs.
 {¶ 37} "B. Both parents shall sign any releases necessary so that the Ashland County Department of Job and Family Services may obtain any information necessary from any service providers regarding the parents or these Orders.
 {¶ 38} "C. Both parents shall be responsible for the cost of any of these Orders that relate to him or her.
 {¶ 39} "D. The Ashland County Department of Job and Family Services, or its designee, shall make random, unannounced visits to the home of both parents to monitor the child's progress and compliance with these Orders.
 {¶ 40} "E. The child, Elisha Sullivan, shall be enrolled in counseling appropriate to her circumstances and Mr. Sullivan shall do all things necessary to cooperate with and participate as requested in that counseling. *Page 9 
 {¶ 41} "F. Mr. Sullivan shall participate in services educating himself in regards to victims of sexual abuse in order to be better able to deal with the issues confronted by Elisha Sullivan. He shall participate in and successfully complete parenting education appropriate to these issues.
 {¶ 42} "G. Lizzie Goyden shall maintain a stable, proper, and suitable home and shall obtain and maintain employment.
 {¶ 43} "H. Lizzie Goyden shall complete the Case Plan in regards to her other two children.
 {¶ 44} "I. Elisha Sullivan shall have no contact of any kind, direct or indirect, with Michael Goyden.
 {¶ 45} "J. The Ashland County Department of Job and Family Services may add additional Protective Supervision Orders as that agency determines to be-appropriate. Either party has a right to object to any additional Protective Supervision Orders by filing a written Objection with the Court upon which the Court will rule after a hearing.
 {¶ 46} "10. The Court has considered placement of the child with the paternal grandmother in this case and would note that the evidence indicated that that would be an acceptable choice. However, the law specifically prefers that a child reside with a parent if appropriate and in this case there is no evidence before the Court indicating that Mr. Sullivan is unfit or unsuitable."
 {¶ 47} In this case, the trial court also ordered that the Ashland County Department of Job and Family Services provide protective services to the family after awarding legal custody to Appellee. The trial court ordered the Agency with great *Page 10 
specificity which items should be included in a protective supervision order. The trial court retained jurisdiction on parenting time and issued the following orders with regard to the case plan:
 {¶ 48} "11. A. Lizzie Goyden may continue to visit with the child, Elisha Sullivan, under the supervision of the Ashland County Department of Job and Family Services as arranged by the Department. The Court further orders that the parties, Mr. Sullivan and Mrs. Goyden, submit a written proposal for parenting time in this case. The Court further orders that the Ashland County Department of Job and Family Services also submit a written proposal and/or recommendation regarding parenting time. In addition, the Court having issued this decision and Order, the Court requests the Guardian Ad Litem to conduct a further investigation as he may determine to be necessary and also submit to the Court a written recommendation on the issue of parenting time. The Court is ordering that those recommendations be submitted within thirty (30) days, after which the Court will review the recommendations and either issue a modified Parenting Time Order or schedule a hearing if the Court determines a hearing to be necessary.
 {¶ 49} "B. The Court may consider transfer of this case pursuant to Juvenile Rule 11, but will not do so until after making a further parenting time determination."
 {¶ 50} The issue in this appeal is whether, after a dispositional order made pursuant to R.C. 2151.353(A)(3) granting legal custody to a parent, a trial court is also required to make an attempt to reunify the family by ordering the preparation of a reunification plan. We hold it does not.
 {¶ 51} R.C. 2151.412 mandates that: *Page 11 
 {¶ 52} "(A) Each public children services agency and private child placing agency shall prepare and maintain a case plan for any child to whom the agency is providing services and to whom any of the following applies:
 {¶ 53} "(1) The agency filed a complaint pursuant to section 2151.27
of the Revised Code alleging that the child is an abused, neglected, or dependent child;
 {¶ 54} "(2) The agency has temporary or permanent custody of the child;
 {¶ 55} "(3) The child is living at home subject to an order for protective supervision;
 {¶ 56} "(4) The child is in a planned permanent living arrangement.
 {¶ 57} As an initial matter, there is no requirement in R.C. 2151.412
for the trial court to make an attempt to reunite the family where legal custody, as opposed to temporary custody, is awarded to a natural parent of the child.
 {¶ 58} Secondly, Appellant's reliance upon In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229 is misplaced. The Baxter case addressed the 1985 versions of R.C. 2151.353 and 2151.412(A) which indicated that in disposition orders pertaining to temporary custody under 2151.353, the welfare department was required to submit an initial plan to reunite the family under R.C. 2151.412(A). Today, both statutes read differently and neither expressly indicates that a reunification plan is required when legal custody, as opposed to temporary custody, is awarded to a natural parent. We decline to read such a requirement into either statute.
 {¶ 59} Appellant's second assignment of error is overruled. *Page 12 
 {¶ 60} The decision of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.
 Delaney, J., Gwin, P.J. and Edwards, J. concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Ashland County Court of Common Pleas Juvenile Division is affirmed. Costs assessed to appellant. *Page 1