OPINION
{¶ 1} Plaintiff-appellant Deanna Kinney appeals the decision rendered by the Belmont County Common Pleas Court, Domestic Relations Division, denying her motion to modify an existing shared parenting order between her and defendant-appellee Roger Kinney. The issue presented in this appeal is whether the trial court abused its discretion in determining that there was not a change in circumstances and that the best interest factors enumerated in R.C. 3109.04(F) did not support a change in the shared parenting agreement. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Deanna and Roger were married in 1994. Together they had a child, Logan, on December 27, 1995. In early 2001, Deanna filed a complaint for legal separation; Roger then filed a complaint for divorce. After a series of hearings, the court determined that custody of Logan would be shared, directing each party to propose a plan for shared parenting. A hearing on issues stemming from the shared parenting determination was scheduled for September 11, 2001 but had to be canceled due to the national events that unfolded on that day. The parties subsequently agreed to submit all matters in writing, including a synopsis of the testimony that would have been given at the hearing.
 {¶ 3} On November 29, 2001, the court adopted the magistrate's shared parenting order, which stated that Logan would spend alternating weeks with each parent, staying with Deanna one week, Roger the next, and so on. The court stated that this option was chosen "to assure `frequent and continued contact by both parents'." (11/29/01 J.E.). On April 2, 2002, a Judgment Decree of Divorce was issued, finalizing the above mentioned custody determination.
 {¶ 4} On July 25, 2002, Deanna filed a motion seeking to modify the shared parenting arrangement, modify the child support and medical provisions, and to prohibit Roger from utilizing his brother Brian Kinney for child care. Deanna cited what she considered to be ten changes in circumstances warranting a revision of the custody order. A hearing on the matter was scheduled for September 9, 2002, but was continued to October 24, 2002, and then again to November 21, 2002.
 {¶ 5} Testimony was presented to a magistrate on November 21, 2002. On December 18, 2002, the magistrate denied Deanna's motion to modify the custody order. On January 3, 2003, the court issued a judgment entry overruling Deanna's objections to the magistrate's findings and adopted the decision of the magistrate in whole. Deanna now appeals from this order.
 ASSIGNMENTS OF ERROR {¶ 6} Deanna raises two assignments of error in her brief. However, as both assignments of error involve the same issues of law and fact, she addresses these assignments of error together. Due to the similarity of the issues raised, we will also address these assignments of error together. They contend:
 {¶ 7} "The trial court erred in overruling appellant's motion to modify the prior orders as to allocation of parental rights and responsibilities by failing to apply the criteria for determining the best interests of the minor child as set forth in Section 3109.04(f)(1) and (f)(2), Ohio Revised Code."
 {¶ 8} "The trial court abused its discretion in continuing the shared parenting order, which is not in the best interests of the minor child, despite overwhelming testimony as to appellee's lack of concern for the minor child's well-being and contempt of the order of the trial court."
 {¶ 9} R.C. 3109.04(E)(1) controls the modification of court ordered parental rights and responsibilities. Pursuant to that statute, three elements must be demonstrated in order for the existing parenting order to be modified: 1) that a change in circumstances has occurred since the prior decree, or that change was unknown at the time of the prior decree, 2) the modification of custody is in the child's best interest, and 3) the advantages of the modification must outweigh any harm that is likely to occur. R.C. 3109.04(E)(1)(a); Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599, 604.
 {¶ 10} R.C. 3109.04(F)(1) lists factors the court shall consider when it is determining whether it is in the best interest of the child to modify the existing parental rights and responsibilities. The statute states in part:
 {¶ 11} "* * * [T]he court shall consider all relevant factors, including, but not limited to:
 {¶ 12} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 13} "(b) If the court has interviewed the child * * *, the wishes and concerns of the child, as expressed to the court;
 {¶ 14} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 15} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 16} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 17} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 18} "(g) Whether either parent has failed to make all child support payments * * *;
 {¶ 19} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25
of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding or caused harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 20} "(i) Whether the residential parent or one of the parents subject to the shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 21} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 22} The trial court's decision to grant or deny the motion for modification will not be reversed by a reviewing court absent a showing of an abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude by the court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Hence, this court will not weigh the evidence that was presented to the trier of fact, but rather will review the record to ensure that the decision was supported by some competent, credible evidence.Vance v. Vance, 151 Ohio App.3d 391, 2003-Ohio-310, at ¶ 12.
 {¶ 23} Deanna argues that the elements enumerated in R.C.3109.04(E)(1) have been met. Thus, according to her, the trial court abused its discretion in denying her motion for modification. The majority of her argument on appeal challenges the trial court's determination that the best interest factors enumerated in R.C. 3109.04(F)(1) did not support a change in the shared parenting plan. In making this argument, Deanna also contends that R.C. 3109.04(F)(2) should have been considered in making the decision of whether to modify the existing court order. However, R.C. 3109.04(F)(2) states that this particular section is to be used "[i]n determining whether shared parenting is in the best interest of the child." This decision was already made by the court in the November 29, 2001 order implementing a shared parenting plan for Logan. The implementation of that shared parenting plan was not appealed. Therefore, R.C.3109.04(F)(2) is inapplicable here.
 {¶ 24} The remainder of Deanna's arguments on appeal address the factors enumerated in R.C. 3109.04(F)(1). In accordance with the (F)(1) factors, Deanna specifically argues that:
 {¶ 25} "[Roger] seems to have no regard for the child's school adjustment, his mental health needs and counseling, refuses to facilitate Court-approved parenting time, refuses to cooperate and make decisions jointly with [Deanna], has engaged in spousal abuse in the presence of the minor child and has exposed the child to potential abuse due to his history of transporting the child in a motor vehicle not operated by a licensed driver and under the influence of alcohol." (Appellant's brief p. 10).
 {¶ 26} As Deanna addressed multiple contentions in this statement, we will examine each one individually, beginning with the notion that Roger disregards Logan's school "adjustment." The court notes that Roger does avoid discussing Logan's schoolwork and progress with Deanna. However, this appears to be because Roger attempts to limit all contact with Deanna, assumedly due to the state of their relationship. Simply because Roger does not wish to discuss Logan's work and progress at school with Deanna does not mean that he totally disregards the child's education. To the contrary, Roger testified that he helps Logan with his homework on the weeks that the child resides with him, and that Roger had a conference with Logan's teacher during the scheduled parent-teacher conferences. (Tr. 133). It is noteworthy that Logan has indeed performed well in school, scoring at the top of his class. Id. Thus, as the court noted, Roger's desire to avoid communication about school with Deanna has not impacted Logan's "adjustment." (1/3/03 J.E.). Therefore, Deanna fails to show how the court failed to consider Logan's best interests in this situation.
 {¶ 27} As to the contention that Roger disregards Logan's mental health needs and counseling, the court properly pointed out that the two missed counseling appointments that Deanna complains of occurred in the summer of 2001, prior to the proffer of testimony offered by each party after the cancellation of the September 11, 2001 hearing. As the trial court stated, this information could have been presented to the court prior to the original decree. Therefore, it is not properly before the court in the present motion, as a modification is only warranted if circumstances have changed since the prior order and this information was available before the prior order. See R.C.3109.04(E)(1)(a).
 {¶ 28} The next component of the argument, i.e. that Roger refuses to facilitate Court-approved parenting time, appears to be a gross magnification, and possibly misrepresentation, of a one-time incident. It is undisputed that Logan was to spend the Martin Luther King holiday of 2002 with Deanna per the court ordered visitation schedule. However, Logan was with Roger prior to the holiday and was not returned to Deanna to spend the day with her. (Tr. 19). Deanna claims that she contacted Roger to make arrangements prior to the holiday and was told that because Roger had the day off from work, he would not let Logan spend the day with Deanna, thus defying the court ordered schedule. Id. at 20. Roger, on the other hand, claims that Deanna never contacted him regarding the visitation rights for that particular holiday. Id. at 132. He stated that he was unaware that Deanna was scheduled to spend the day with Logan, and further stated that Deanna never told him otherwise. Id. at 111.
 {¶ 29} Clearly, this was a matter of credibility. In an issue of credibility, the decision of the trier of fact is given deference. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. That is because the trial court can observe the parties and thus examine the evidence in a way that cannot be conveyed through the printed record. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23; Trickey v. Trickey (1952), 158 Ohio St. 9, 13. Hence, the court's finding that "[Deanna] did not get Martin Luther King Day in * * * 2002 * * * because she did not call and make arrangements" (1/3/03 J.E.) will not be disturbed by this court. In light of this, there is no evidence that Roger refuses to facilitate court-approved parenting time and, in turn, no evidence that this demonstrates a failure to consider Logan's best interest.
 {¶ 30} Deanna next argues that Roger "refuses to cooperate and make decisions jointly with Deanna." While Deanna does not refer to any specific decisions, it can be inferred from her brief that she is referring to two incidents in particular: a vacation and Roger's use of his brother as a child care provider. As for the vacation, Deanna complained in her motion at the hearing, and in her brief, that Roger took Logan on a vacation without informing her or providing contact information. (Tr. 16). Roger addressed the situation at the hearing, stating he indeed provided verbal notice to Deanna a week and a half before the trip. Id. at 106. When asked why he did not leave a phone number, Roger stated, "Well, past experience says that more information is usually used against you. I didn't want my reservations to be cancelled. She didn't specifically ask, I'm not going to volunteer that." Id. at 131. Once again, this issue is a credibility question. The court determined that Roger was telling the truth when he stated that he gave his account of the situation, and this court will not second-guess credibility determinations made by the trier of fact. See Seasons Coal,10 Ohio St.3d at 80. Thus, this alleged incident is not evidence that the court failed to consider Logan's best interests.
 {¶ 31} Deanna also contends that Roger's use of his brother Brian to watch Logan when he is unavailable is against Logan's best interest. However, Deanna does not cite to any law supporting the proposition that one parent in a shared custody arrangement cannot utilize a caregiver simply because the other parent in the shared custody arrangement does not like that caregiver. Perhaps if Brian were alleged to be somehow unfit there may be merit to this contention. However, mere discord between the mother and father's choice of a babysitter falls short of being against the best interest of the child.
 {¶ 32} Deanna's next argument to demonstrate that the court failed to consider Logan's best interests is that Roger has "engaged in spousal abuse." There was testimony from both parties regarding the alleged incident in question. Deanna testified that one day when Roger came to pick up Logan at her home, the two began to argue. She testified that Logan was getting upset, so she asked Roger to leave the home so that she could calm Logan. She stated that Roger did walk out the door, but then held the door open and continued to argue with her. Deanna testified that Roger then "grabbed [her] underneath the chin, pushing [her] head back." (Tr. 21). Deanna further stated that Logan was present for this incident and "was very upset and crying." Michael Gerevics, Deanna's father, confirmed Deanna's version of events, stating that Roger grabbed Deanna by the throat in front of Logan. (Tr. 43). However, Gerevics admitted that Deanna's back was facing him and thus he could not see her neck and could not see Roger's hand contacting her throat. Rather, he clarified that he could "just see his arm and the side of the arm. [He] couldn't see his hand there because her head was in the way." Id.
 {¶ 33} Roger presented a different version of events to the court. He testified that Deanna was upset prior to his arrival at her home because she had just learned of the shared parenting order issued by the court. (Tr. 137). Roger stated that "Deanna began to tell [Logan] he was going to be riding a different bus and how he wouldn't know anybody, and he began to cry." Id. He then stated that the two began to argue, and Deanna was talking loudly and "acting drunk." Id. He testified that Deanna then told him to leave, telling him that she would send Logan out. He further testified that Deanna tried to persuade him to let Logan spend the night there instead, and when he refused, she "began slapping [him] and telling [him] to get out, you F'ing (sic) drunk" in front of Logan. Id. at 138. Roger stated that when he walked out the door, Deanna slammed his fingers in the screen door and began to kick him. Id. He testified that in response he simply removed his hand from the door and waited for the police to arrive, as he knew they had been called.
 {¶ 34} As a result of this incident, domestic violence charges were brought against Roger. He was found not guilty. However, Deanna contends that although there was not enough evidence to find Roger guilty by a criminal standard, i.e., beyond a reasonable doubt, there is still enough evidence to prove by a preponderance that he assaulted her.
 {¶ 35} The trial court made the following statement concerning the alleged domestic violence incident:
 {¶ 36} "This court is not inclined to make numerous findings regarding the incident. However, this court finds from testimony that the father had been in the house, and disagreements began in front of the child. He was leaving through the door. Then the mother approached him. Whatever contact occurred could have been easily avoided by her not approaching him when he went to the door and by simply allowing him to exit. Obviously, there were other maternal family members present who could have peacefully assisted any exchange. Though the court does not seek to approve the acts of either party in front of Logan, the court does not find this incident to be a circumstance requiring a change in the shared parenting plan." (1/3/03 J.E.).
 {¶ 37} As a reviewing court, we will defer to the trial court's resolution of the conflicting accounts. Thus, the trial court did not error when it failed to consider this incident when considering the best interests of Logan.
 {¶ 38} Next, in support of her contention that the trial court failed to consider the best interests of Logan, Deanna contends that Roger "has exposed [Logan] to potential child abuse due to his history of transporting the child in a motor vehicle not operated by a licensed driver and under the influence of alcohol." Roger's license was suspended from August 15, 2001 to February 15, 2002, due to a DUI conviction. Deanna testified that she, members of her family, and her friends saw Roger driving, sometimes with Logan in the car, during this time period. For the length of the suspension, Roger was only legally allowed to drive to and from work, trips the alleged witnesses deduced he could not be on due to the times and locations of their "sightings." Deanna testified to seeing Roger driving with Logan in the car at the movies, her friend Donna Yocum testified to seeing Roger driving at a gas station on Christmas Day, and Deanna and both of her parents testified to seeing Roger driving Logan to and from parental exchanges. Roger denies having driven during this license suspension, accounting for who was driving the car he was in during each of the specified incidents. He further stated that he would never knowingly drive with Logan in the car if he knew that his license was suspended.
 {¶ 39} There is no evidence of a citation for driving under suspension during the span of the suspension at issue. Furthermore, as the trial court pointed out, there is no evidence that Roger was ever cited for driving under suspension with Logan in the car. The trial court stated that it "accepts the father's testimony that he would not drive Logan knowing he had no driver's license." As the trial court is in the best position to judge issues of credibility and thus resolve questions of fact, this court will not disturb those findings. In re Nice,141 Ohio App.3d 445, 455, 2001-Ohio-3214.
 {¶ 40} Yet, we do note that Roger admitted to driving under a separate suspension, albeit due to a misunderstanding regarding the date of reinstatement. However, that suspension took place prior to the filing of the original custody decree. As was previously explained above, allegations of conduct that occurred before the original custody order was issued cannot logically constitute a change in circumstances occurring after the original custody disposition. Thus, that citation is not properly before the court in a motion to alter the custody order. See R.C.3109.04(E)(1).
 {¶ 41} Finally, we are left with the most serious of appellant's allegations: that Roger has driven while intoxicated with Logan in the car. If true, such a scenario may merit a change of custody orders. However, this alleged incident is not properly before the court. Deanna, who is the only person who testifies that drunk driving with Logan in the car took place, says it happened on July 4, 2001. Once again, if the incident occurred, it was prior to the issuance of the original custody order and therefore cannot constitute a change in circumstance that is necessary to warrant a change in the shared parenting plan.
 {¶ 42} Consequently, considering all arguments made by Deanna, we find no support in the record for contention that the trial court did not consider Logan's best interests when it denied her request to modify the current custody arrangement. Furthermore, we do not find that the trial court abused its discretion by finding that no change in circumstance warranted a modification of the prior decree. Thus, the trial court did not abuse its discretion in denying the motion to modify. As such, these assignments of error lack merit.
 {¶ 43} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., concurs.