OPINION *Page 2 
{¶ 1} On May 9, 2007, appellee, the Tuscarawas County Job and Family Services, filed a complaint for permanent custody of Elizabeth Billiter born October 1, 1997, alleging the child to be neglected and dependent. Mother of the child is Tina Billiter; father is Dariel Dunivent. At the time of the filing, the child was in the legal custody of her stepfather, appellant, Richard Cline, as a result of a 2002 neglect and dependency action involving the child's biological parents. At one time, appellant was married to Ms. Billiter.
 {¶ 2} A hearing was held on June 6, 2007. By judgment entry filed June 11, 2007, the trial court found the child to be neglected and dependent. Findings of fact were filed on July 3, 2007.
 {¶ 3} On June 28, 2007, appellee filed a motion for a hearing on the need to expend reasonable efforts to reunify. On July 3, 2007, appellant filed a motion for legal custody of the child. A hearing was held on July 5, 2007. By judgment entry filed July 10, 2007, the trial court denied appellant's motion for legal custody, and granted permanent custody of the child to appellee.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT'S DECISION THAT THE MINOR CHILD WAS NEGLECTED AND DEPENDENT WAS AN ABUSE OF DISCRETION, AS IT WAS NOT SUPPORTED BY RELEVANT, COMPETENT, AND CREDIBLE EVIDENCE." *Page 3 
 II {¶ 6} "THE TRIAL COURT'S DECISION THAT JOB AND FAMILY SERVICES WAS NOT REQUIRED TO DEMONSTRATE REASONABLE EFFORTS TO RETURN THE MINOR CHILD TO APPELLANT'S HOME WAS AN ABUSE OF DISCRETION, AS IT WAS NOT SUPPORTED BY RELEVANT, COMPETENT, AND CREDIBLE EVIDENCE."
 III {¶ 7} "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD SHOULD NOT BE RETURNED TO THE LEGAL CUSTODY OF THE APPELLANT AND THAT IT WAS IN THE MINOR CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES."
 I {¶ 8} Appellant claims the trial court's decision that the child was neglected and dependent was against the manifest weight of the evidence. We disagree.
 {¶ 9} R.C. 2151.03 defines "neglected child" as follows:
 {¶ 10} "(A) As used in this chapter, `neglected child' includes any child:
 {¶ 11} "(1) Who is abandoned by the child's parents, guardian, or custodian;
 {¶ 12} "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 {¶ 13} "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being; *Page 4 
 {¶ 14} "(4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition;
 {¶ 15} "(5) Whose parents, legal guardian, or custodian have placed or attempted to place the child in violation of sections 5103.16 and5103.17 of the Revised Code;
{¶ l6} "(6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare;
 {¶ 17} "(7) Who is subjected to out-of-home care child neglect."
 {¶ 18} R.C. 2151.04 defines "dependent child" as follows:
 {¶ 19} "As used in this chapter, `dependent child' means any child:
 {¶ 20} "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
 {¶ 21} "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 {¶ 22} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 {¶ 23} "(D) To whom both of the following apply:
 {¶ 24} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 25} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the *Page 5 
child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 26} Pursuant to R.C. 2151.35, clear and convincing evidence must support a neglect or dependency finding. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 27} "Unlike a finding of neglect under R.C. 2151.03, which requires proof that the parents were willfully at fault in abandoning or neglecting the children or refusing to perform their parental duties, a finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support. The focus is on the condition of the children, not the fault of the parents." In reBibb (1980), 70 Ohio App.2d 117, paragraph one of the syllabus.
 {¶ 28} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 29} In his brief at 13-15, appellant argues the following conclusions by the trial court are incorrect:
 {¶ 30} 1. Appellant has ongoing issues with illegal drugs (Finding of Fact No. 4). *Page 6 
 {¶ 31} 2. Appellant attempted to circumvent hair follicle drug testing by removing all the hair from his body without cause (Finding of Fact No. 5).
 {¶ 32} 3. During the time appellant had legal custody, the child had been cared for most of the time by appellant's elderly mother (Finding of Fact No. 6).
 {¶ 33} 4. Appellant permitted the biological mother to have unsupervised visits with the child which demonstrated poor judgment and created a risk to the child (Finding of Fact No. 7).
 {¶ 34} Appellant failed to take requested drug screens and was deceptive regarding hair follicle testing. T. at 81-82. A little over two months prior to the July 5, 2007 hearing, appellant was convicted on a misdemeanor drug paraphernalia charge. T. at 8, 11, 108-109; State's Exhibit B. These facts support the trial court's conclusion of an ongoing problem with drugs.
 {¶ 35} Appellant's mother lives with appellant and the child. T. at 47. She is elderly and walks with a cane. T. at 38. The child is partially supervised by the grandmother and sleeps with the grandmother. T. at 31, 49, 60. During a home visit, "the home was cluttered, a very strong odor," and was in foreclosure until a Chapter 13 bankruptcy was filed. T. at 31, 36. Appellant did not have a job as he was fired because he reached his "ten point maximum," a point system with the company he had been working for. T. at 6. He was expecting to be employed shortly after the hearing. T. at 155. Appellant does not have a valid driver's license, but admitted to appellee's investigator "that he drives when he has to." T. at 8-10, 35.
 {¶ 36} Appellant and his mother admitted to permitting the biological mother to have unsupervised visits with the child within the three months prior to the hearing. T. *Page 7 
at 9, 56-57. Although appellant was not aware of any court order prohibiting visitation between the child and her biological mother, appellant was aware of the mother's drinking, drug, and mental problems, and even stated "[s]he was just a little bit outside of reality most of the time," and her condition over the past six years has been "pretty much the same." T. at 16-21. He stated he did not have any concerns about the child visiting her biological mother because he spoke with the mother "and we agreed that she tell, wouldn't try and fill her head full of crap, and she showed up at the house to pick her up she was sober, and when she brought her back four hours later she was sober." T. at 9.
 {¶ 37} In 2002, appellant was awarded legal custody of the child and her brother under a neglect/dependency action involving their biological parents. T. at 79. In 2004, appellee again became involved with the child because molestation allegations were made against the child's brother and involved the child as the victim. T. at 79-80. A case plan was adopted which included the biological parents and appellant. T. at 80. Appellant was to participate in family counseling with the child's brother, participate in drug and alcohol assessment, and submit to random drug screening. T. at 81. Appellant did not comply with all the requests for random screening. T. at 82. While appellant did not participate in family counseling with the child's brother, he did participate in Home Based Therapy with counselor Leslie Drum. T. at 82-83, 85-88. Ms. Drum described appellant as motivated, and he was able to learn "skills that helped stabilize the home." T. at 139. Appellant was open to Ms. Drum's suggestions. Id. Ms. Drum's major concern was the amount of time the child was cared for by the grandmother, but by the time she was done working with the family, the problem was *Page 8 
rectified. T. at 139-140. Ms. Drum testified there was a positive bond between appellant and the child. T. at 141.
 {¶ 38} Although the major focus of the testimony was on appellant's acts, there was essentially no testimony that the child had been harmed. In a report filed July 5, 2007, the guardian ad litem concluded appellant's "recent arrest and conviction in May of 2007 for possessing drug paraphernalia (crack pipe) and his poor judgment in allowing Elizabeth visitation with her mother substantially threatens Elizabeth's general health and welfare." The guardian ad litem recommended that the child be placed in appellee's permanent custody.
 {¶ 39} Although each factor as argued by appellant does not lead to a conclusion of neglect or dependency, the evidence when viewed in total substantiates the trial court's decision. Of note is that appellant is not biologically related to the child, but was granted legal custody because the mother was denied such and he was the child's former stepfather. Also, a previous trial court order found appellant had not cooperated with the case plan concerning the child's brother. T. at 71; State's Exhibit A.
 {¶ 40} No one argues that the child should be placed with the biological mother or father. The mother asserted in her testimony that it would be "most appropriate" for the child to remain with appellant. T. at 171.
 {¶ 41} Upon review, we conclude the trial court did not err in granting permanent custody of the child to appellee.
 {¶ 42} Assignment of Error I is denied. *Page 9 
 II {¶ 43} Appellant claims the trial court erred in not requiring appellee to make reasonable efforts toward reunification. We disagree.
 {¶ 44} R.C. 2151.419(A) states the following:
 {¶ 45} "Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount."
 {¶ 46} In 2002, appellant was granted legal custody of the child and her brother. In 2004, appellant did not cooperate in the case plan for the child's brother, and appellee was granted permanent custody of the brother. T. at 71; State's Exhibit A. *Page 10 
The biological parents did not appeal these decisions, and do not object to the trial court's decision sub judice, except for Ms. Billiter's opinion that legal custody of the child is "most appropriate" with appellant.
 {¶ 47} R.C. 2151.419(A)(2)(e) provides the following:
 {¶ 48} "(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
 {¶ 49} "(e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353,2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 50} The gravamen of this assignment is whether a legal custodian is granted the same rights as a parent under R.C. 2151.419(A). The wording of the section concerns the removal of a child from the "child's home." Once legal custody is granted, the child's home is the home of the legal custodian. However, our brethren from the Sixth District in In thematter of: Kenny B., Jr., Lucas App. No. L-05-1227, 2006-Ohio-968, held the following at ¶ 17 and 18:
 {¶ 51} "While there has been some modern trend to liberally define family and to bestow certain rights to extended family, see, e.g.,Harold v. Collier, 107 Ohio St. 3d 44, 836 N.E.2d 1165, 2005-Ohio-5334
(grandparent visitation), we have found no authority, including those cited by appellant, which grants to an unrelated individual the unique status occupied by biological parents or their legal equivalent, adoptive parents. It is only these upon whom constitutional protection is invested and, in Ohio, the strictures of *Page 11 
R.C. 2151.414 adhere. Consequently, we reject appellant's assertion that he is entitled to the same legal status as Kenny B., Jr.'s natural parents.
 {¶ 52} "Appellant's position is simply that of a prior legal custodian. The touchstone of a dispositional order, including legal custody after a finding of neglect and dependency, is that the order be in the child's best interest. In re Nice (2001), 141 Ohio App. 3d 445,455, 751 N.E.2d 552. Decisions concerning an award or change of legal custody will not be disturbed absent an abuse of discretion. In reAlexander C, 6th Dist.App. No. L-05-1173, 2005-Ohio-6134, at ¶ 6. An abuse of discretion is more than error of law or judgment; the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140."
 {¶ 53} Based upon this reasoning, we find the trial court did not err in not requiring appellee to make reasonable efforts toward reunification.
 {¶ 54} Assignment of Error II is denied.
 III {¶ 55} Appellant claims the trial court erred in determining the child's best interest was best served by granting permanent custody to appellee. We disagree.
 {¶ 56} R.C. 2151.414(D) governs "best interests" and states the following:
 {¶ 57} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following: *Page 12 
 {¶ 58} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 59} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 60} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 61} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 62} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 63} As noted by in the guardian ad litem's July 5, 2007 report, the child is comfortable, happy, and well-adjusted in the foster placement, and "they are very much interested in adopting" her and making her a "permanent member of their family." Jaime Grunder, the child's caseworker, testified it would be in the child's best interest to be placed in appellee's permanent custody. T. at 112-113, 123. Ms. Grunder's opinion was based on appellant allowing unsupervised visits with the biological mother, his possible drug use, and his failure to comply with the 2004 drug screening requests. T. at 112. *Page 13 
 {¶ 64} Upon review, we find clear and convincing evidence that the best interests of the child would be served with permanent custody to appellee.
 {¶ 65} Assignment of Error III is denied.
 {¶ 66} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division, is hereby affirmed.
 Farmer, P.J. Edwards, J. and Delaney, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division, is affirmed. *Page 1