**In re NICE et al., Dependent–Neglected Children.**

[Cite as *In re Nice* (2001), 141 Ohio App.3d 445.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 00BA18.

Decided March 20, 2001.

*Frank Pierce*, Belmont County Prosecuting Attorney, and *Megan Banker*, Assistant Prosecuting Attorney, for appellee.

*Christopher Berhalter*, for appellant, Penny McGlaughlin.

*Elaine Skorich*, for appellant, Justin Benge.

*Paul Jefferis*, for appellant, Donald McGlaughlin.

VUKOVICH, Presiding Judge.

Appellant Penny McGlaughlin appeals the decision of the Belmont County Common Pleas Court, Juvenile Division, which granted permanent custody of two children to Children Services (the agency) and granted legal custody of two other children to a relative. For the following reasons, the judgments of the trial court are affirmed.

## STATEMENT OF THE CASE

On September 21, 1998, ten-month-old Brittany McGlaughlin arrived at the hospital with breathing problems. Doctors discovered that she had multiple rib fractures. Hence, the agency exercised emergency temporary custody over Brittany, her twin brother Adam, and her half-sisters, Courtney and Danni–Jo Nice, who were nearly six and three years old, respectively. During the investigation, the agency discovered that Adam had been diagnosed with shaken baby syndrome and a fractured leg at age six weeks after his father, Donald McGlaughlin, brought him to a hospital, stating that he had dropped Adam on his head while bathing him. The two older girls accused their stepfather, McGlaughlin, of pulling their hair, punching Courtney, and attempting to suffocate Danni–Jo with a pillow.

The agency filed complaints alleging that Brittany and Adam were neglected and that Courtney and Danni–Jo were dependent. On November 18, 1998, Mr. and Mrs. McGlaughlin consented to these adjudications and consented to the agency's retaining temporary custody of the four children. On April 4, 1999, the agency filed a motion to modify the temporary custody of Brittany and Adam to permanent custody and a motion to modify the temporary custody of Courtney and Danni–Jo to legal custody to the girls' paternal grandmother. The trial court held a hearing on the motion on August 19, 1999. Doctors' depositions were submitted later.

On October 4, 1999, the court held that the agency failed to show by clear and convincing evidence that permanent and legal custody should be granted. The court then *sua sponte* granted a six-month extension of temporary custody and ordered the agency to submit a new case plan. The case plan was submitted in October, approved in November, signed by the parents in December, and filed on January 3, 2000. On February 3, 2000, the agency refiled its motions to modify temporary custody to permanent custody with regard to Brittany and Adam and to legal custody to a relative with regard to Courtney and Danni–Jo.

Appellant filed a motion to suppress testimony regarding the children's injuries. She also requested that the court dismiss the agency's motions on the grounds that the agency failed to timely request an extension of temporary custody and the court had no authority to *sua sponte* grant an extension of temporary custody without a hearing. The agency filed a motion to incorporate prior testimony and a memorandum in opposition to appellant's motion to dismiss. On April 6, 2000, the court overruled appellant's motions and held a hearing on the agency's custody motions.

On April 11, 2000, the court granted permanent custody of Brittany and Adam to the agency and granted legal custody of Courtney and Danni-Jo to the grandmother. Appellant filed a timely notice of appeal.

Appellant sets forth three assignments of error which we will discuss in reverse order. Appellant's third assignment of error provides:

"The juvenile court erred in granting permanent custody and legal custody in that it lacked jurisdiction and/or authority to issue such a decision when the statutory time requirements had expired."

Pursuant to R.C. 2151.353(F), a temporary custody order terminates a year after the child is placed in shelter care or a year after a complaint is filed, whichever is earlier. In this case, the children were placed in emergency temporary custody on September 22, 1998, and a complaint was filed thereafter. As such, temporary custody would generally terminate on September 22, 1999, which is known as the "sunset date."

However, R.C. 2151.353(F) also provides that if the agency files a motion requesting certain dispositions, then temporary custody is continued until the court issues a dispositional order under R.C. 2151.415. Under R.C. 2151.415(A), an agency with temporary custody must file a motion requesting any of six dispositional orders no later than thirty days prior to the sunset date. In the case at bar, the agency filed the following two motions months prior to the one-year sunset date: a motion under R.C. 2151.415(A)(3), requesting that legal custody of two children be granted to a relative, and a motion under R.C. 2151.413(A) or R.C. 2151.415(A)(4), asking for permanent custody of the other two children and that parental rights be terminated. Hence, temporary custody continued until the court issued a dispositional order under R.C. 2151.415. On October 4, 1999, the trial court denied the dispositional orders requested by the state. Instead, the court issued an order pursuant to R.C. 2151.415(A)(6), which purported to extend the temporary custody order it had previously rendered for an additional six months.

Appellant contends that the trial court was not permitted to extend temporary custody, since the agency never filed a motion seeking an extension. Appellant complains that because no motion was filed, she received no notice of the court's intention to extend temporary custody and no opportunity to be heard on the propriety of such extension. Appellant then argues that, since no motion requesting an extension of temporary custody was filed, temporary custody terminated under the statute when the court denied the motions of the agency for permanent and legal custody. Appellant concludes that because temporary custody terminated in October 1999, the court had no jurisdiction to grant permanent and legal custody in April 2000.

■ The agency alleges that appellant waived many of her arguments by failing to appeal the court's extension of temporary custody within the time requirements of App.R. 4. The agency's waiver argument has merit if we find that an extension of temporary custody is a final appealable order. As background, note that a preadjudicatory temporary custody order is not a final appealable order. *Howard v. Catholic Soc. Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 146, 637 N.E.2d 890, 894–895. On the other hand, a postadjudicatory temporary custody order is a final appealable order. *In re Murray* (1990), 52 Ohio St.3d 155, 158, 556 N.E.2d 1169, 1172–1173. In *Murray*, the Supreme Court held that an order of temporary custody which emanates from an adjudication of dependency, neglect or abuse is a final order under R.C. 2501.02 and 2505.02. *Id.* The court characterized a postadjudicatory temporary custody order as an order that affects a substantial right, determines the action, and prevents a judgment under the prior version of R.C. 2505.02. *Id.*[1]

The *Murray* court seemed to focus its reasoning on the fact that if a party cannot appeal a temporary custody order entered after a finding of neglect or dependency, then the issue of neglect or dependency would never be reviewable after a permanent custody order is entered. Nonetheless, the court also cited *In re Rule* (1963), 1 Ohio App.2d 57, 30 O.O.2d 76, 203 N.E.2d 501, which held that a modification of a previously entered temporary custody order, made after a finding of dependency or neglect, is a final appealable order. *Id.* at 61, 30 O.O.2d at 78–79, 203 N.E.2d at 504, fn. 2. Furthermore, the court favorably cited *In re Patterson* (1984), 16 Ohio App.3d 214, 16 OBR 229, 475 N.E.2d 160, which is a case on point. In *Patterson*, the Twelfth Appellate District specifically held that an order continuing temporary custody is a further dispositional order which is subject to review on appeal.

■ It thus appears that an extension of a temporary custody order, issued subsequent to a finding of dependency, neglect, or abuse, is a final order. See *id.; Patterson*, 16 Ohio App.3d at 215, 16 OBR at 230–231, 475 N.E.2d at 161–162; *In re Kinstle* (Mar. 6, 1998), Logan App. Nos. 8–97–27, 8–97–28, 8–97–29, 8–97–30, 8–97–31 and 8–97–32, unreported, at 3, 1998 WL 148075; *In re Greer* (Dec. 2, 1996), Guernsey App. No. 96CA30, unreported, 1996 WL 753162, at 2. Otherwise, a parent could never contest the propriety of an extension of temporary custody. Therefore, appellant waived her arguments concerning the propriety of the court's extension of temporary custody by failing to appeal after the extension was ordered.

---

1. This definition of a "final order" is now contained in R.C. 2505.02(A)(1) and (B)(1). Further, R.C. 2505.02(A)(2) and (B)(2) are applicable in that the order affects a substantial right and is made in a special proceeding.

Moreover, if we disregard the waiver concept for a moment, appellant had notice that the state wished to permanently terminate her parental rights with regard to two children and give legal custody of the other two children to a relative. Appellant had an opportunity to be heard on the propriety of these dispositions. If the court wishes to deny these drastic measures and give the parents more time to comply with case plans, there appears to be no reason for the court to hold another hearing on the propriety of extending temporary custody. Admittedly, if the agency requested an extension of temporary custody or the court wished to extend temporary custody *sua sponte* where no other proceedings were occurring in the case, then the parent is entitled to notice and a hearing on the extension. R.C. 2151.353(E)(2); 2151.415(D)(1); 2151.417(B). However, it seems illogical to require a court to schedule a separate hearing for extending temporary custody where the court just held an entire hearing on the more drastic dispositions of permanent and legal custody. If evidence at that hearing on permanent and legal custody persuaded the court that the factors for extending temporary custody existed, then the court could extend temporary custody immediately thereafter. R.C. 2151.415(D)(1).

Regardless, any issues concerning an extension of temporary custody essentially become moot after a court grants an agency's motion for permanent or legal custody. This statement ties into appellant's jurisdictional argument. As aforementioned, appellant contends that temporary custody terminated due to a lapse of time, the agency's failure to file a motion for an extension and the court's failure to give notice, and a hearing on the issue of extension of temporary custody. Appellant reasons that if temporary custody terminated for any of these reasons, then the court lacked jurisdiction to rule on permanent and legal custody.

However, the Supreme Court has held that a juvenile court does not lose jurisdiction to enter dispositional orders upon technical termination of temporary custody due to the expiration of the sunset date. *In re Young Children* (1996), 76 Ohio St.3d 632, 636, 669 N.E.2d 1140, 1143. See, also, *Holloway v. Clermont Cty. Dept. of Human Serv.* (1997), 80 Ohio St.3d 128, 130–131, 684 N.E.2d 1217, 1219–1220 (reaffirming the court's jurisdiction to enter a dispositional order extending temporary custody after the passing of the sunset date where the problems that led to the original grant of temporary custody have not been mitigated). Thus, even if temporary custody technically terminated and the sunset date passed due to the state's failure to request an extension of temporary custody and the lack of a separate hearing on the propriety of an extension, the court maintained jurisdiction to rule on a subsequent request for permanent and/or legal custody. Accordingly, this assignment of error is overruled.

Appellant's second assignment of error contends:

"The juvenile court erred in considering previous testimony used in adjudication of dependency and neglect in violation of Ohio Revised Code § 2151.414."

Appellant argues that the court should not have considered expert testimony on shaken baby syndrome in making a determination on the permanent custody of Adam and Brittany. Appellant relies upon the portion of R.C. 2151.414(A)(1), which provides that, at a permanent custody hearing, "[t]he adjudication that the child is abused, neglected or dependent * * * shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody." Appellant believes that by admitting evidence that could also be used to support an adjudication of neglect, the court somehow engaged in a readjudication of neglect.[2] However, this argument is misguided.

The prohibition in R.C. 2151.414(A)(1) against readjudication of neglect and dependency does not preclude the court from hearing testimony that was presented or may have been relevant to the admission of neglect. *In re Moody* (Aug. 7, 2000), Athens App. No. 99–CA–62, unreported, 2000 WL 1154046, at 4; *In re Tiffany B.* (June 2, 2000), Lucas App. No. L–99–1174, unreported, 2000 WL 706832, at 6. Rather, the prohibition is merely an attempt to emphasize that the outcome of the permanent custody hearing has no effect on the prior adjudication of neglect or the prior order of temporary custody, meaning that the parent cannot "erase" past findings of neglect by defeating the agency's motion for permanent custody. *Id.*

Appellant concedes that the court may consider all relevant evidence in determining whether any factors exist that support a finding that the child cannot be placed with either parent within a reasonable time. R.C. 2151.414(E). See, also, R.C. 2151.414(E)(1) (which requires evaluation of whether the conditions that caused the children's removal have been mitigated), (E)(15) (which requires the court to consider whether a parent allowed the child to suffer neglect), and (E)(16) (which states that, besides the listed factors, the court may consider any other factor that the court considers relevant). As will be demonstrated *infra*, R.C. 2151.414(D) is more pertinent in the case at bar. This section states that the court shall consider all relevant factors including but not limited to those listed when determining the best interests of a child. As the agency posits, testimony on the children's injuries is relevant to the determination of whether it is in the children's best interests to be returned to the possible cause of the

---

2. Note that neglect and dependency were not actually litigated because appellant and Mr. McGlaughlin admitted these allegations and consented to the adjudication.

injuries. See R.C. 2151.414(D). Accordingly, this assignment of error is over-ruled.

Appellant's first assignment of error alleges:

"The juvenile court erred in granting permanent custody to Belmont County Children Services and legal custody to a relative because said determination was not supported by sufficient evidence to meet the clear and convincing standard of proof."

Appellant contests the evidence supporting the award of legal custody of Courtney and Danni–Jo and the award of permanent custody of Adam and Brittany. We should first analyze the evidence presented in support of the award of legal custody to the children's paternal grandmother. The agency filed a motion requesting that temporary custody be modified to legal custody under R.C. 2151.415(A)(3). The court must hold a dispositional hearing and issue a dispositional order under R.C. 2151.415(A) "in accordance with the best interest of the child as supported by the evidence presented." R.C. 2151.415(B).

An award of legal custody shall not be reversed on appeal absent an abuse of discretion. *In re Guedel S.* (June 16, 2000), Lucas App. No. L–99–1343, unreported, at 2, 2000 WL 770132. An abuse of discretion exists where the trial court's decision is unreasonable, arbitrary, or unconscionable. If the court's decision on the children's best interests regarding legal custody is not supported by competent, credible evidence, then it is unreasonable and may be reversed. *In re Cline* (Oct. 4, 1999), Clinton App. No. 98–11–023, unreported, at 3, 1999 WL 791534. Before performing our review, we should note that the trial court is in the best position to weigh the testimony and observe the witnesses' demeanor in order to gauge their credibility. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185. See, also, *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159, 1163 (stating that credibility issues are very critical in custody cases as much may be evident from demeanor and attitude that does not translate into the record).

Initially we should emphasize that legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody. For instance, appellant retains residual parental rights regarding Courtney and Danni–Jo, which include visitation and the privilege to determine the children's religion. See R.C. 2151.011(B)(9) and (10). Also, as the journal entry recites, appellant has the opportunity to request the return of these two children in the future. As such, the trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence. See R.C. 2151.414(B)(1) and (E); R.C. 2151.415(B); Juv.R. 29(E).

In conducting our review, we point out that the children's guardian *ad litem* recommended that legal custody of Courtney and Danni–Jo be given to the children's paternal grandmother. The children's father had no objection to this arrangement. Caseworkers opined that it was in the girls' best interests to live with their grandmother and that she provided a safe, secure, and stable placement and had done so since the children's removal.

Some evidence, offered without objection, established that Courtney and Danni–Jo were in fear of appellant's husband as this man had punched Courtney in the chest, placed a pillow over Danni–Jo's face, and pulled the girls' hair. Appellant's husband admitted the hair-pulling incident and its inappropriateness. Testimony indicated that when the girls disclosed these incidents to appellant, she insisted that her husband was just "playing."

When the children were first removed in the fall of 1998, appellant admitted that her husband has an anger-control problem concerning the children. Although Mr. McGlaughlin has not completed any of the recommended counseling, appellant claims that his problem no longer exists. However, a social services aide testified to an outburst on July 29, 1999, where Mr. McGlaughlin got extremely angry about his son's haircut, which he had already seen six weeks before, told someone to hold the child down so he could shave his head bald, and then told everyone to go "fuck" themselves in front of all four children.

Evidence also established that the infant twins, Adam and Brittany, had been abused but that appellant refuses to acknowledge the existence of the abuse. Although testimony concedes that appellant would be a good mother, she and her husband are a unit and the return of the children to her encompasses a return to living with the husband. For these reasons among others, the court's award of legal custody of Courtney and Danni–Jo to their paternal grandmother should be upheld.

Regarding the award of permanent custody to the agency, appellant states that she was presented with the case plan in December 1999, the court approved the case plan on January 3, 2000, and the agency filed its motion for permanent custody on February 3, 2000. She complains that she was not given enough time in which to comply with the case plan. She also contends that the caseworkers admit that she is in compliance with her case plan and that the court should not hold her husband's past noncompliance against her.

First, we note that the agency filed the case plan with the court in October 1999 and the court approved it in November. Appellant concedes that the case plan was almost exactly the same as the original case plan filed after the children's removal in 1998. After the second case plan was filed, appellant had her first individual counseling session on January 11, 2000, and attended four

more sessions. She missed her fifth session, scheduled for March 6, 2000. At the April 6 hearing, she claimed to have an appointment scheduled for April 10. Mr. McGlaughlin did not begin his counseling until February 3, 2000, and returned for two more sessions in February. He did not attend another session until April 5, which was a court-ordered group session resulting from a 1995 domestic violence conviction.

 Appellant concedes that her husband, who has not appealed his loss of parental rights over the twins, did not comply with the prior case plan and belatedly attempted to comply with the present case plan. She states that she finally convinced him that the only way to have the children returned is to attend the individual and group counseling. She contends that the court is not permitted to hold her husband's failures against her in granting permanent custody to the agency. Nonetheless, because appellant lives with her husband, to return the children to her is to return them to him. Hence, it is proper to consider his failure to complete counseling as a factor weighing heavily against returning the children to her. Her husband is the reason that the agency believes that it is unsafe to return the children. Testimony established that even if Mr. McGlaughlin completed counseling, the agency would still refuse to recommend that the children be returned due to the severity of the twins' injuries and the fact that appellant refuses to admit that the injuries were inflicted rather than accidental.

 The circumstantial evidence demonstrates that Mr. McGlaughlin is the cause of the children's injuries. For instance, testimony shows that in 1998, Mr. McGlaughlin stated that Adam's brain injuries were caused when he dropped him while bathing him. Yet, medical doctors opined that inflicted shaken baby syndrome, not an accidental fall, was the cause of the injuries. Moreover, on February 14, 2000, Mr. McGlaughlin told his counselor that Adam's injuries resulted when "someone got frustrated." The counselor interpreted this as an admission that Adam was abused. Additionally, in 1998, Mr. McGlaughlin stated that he caused ten-month-old Brittany's broken ribs when he gave her CPR. However, in 2000, he stated that Courtney, who was then five years old, broke Brittany's ribs by attempting CPR.

As aforementioned, appellant stated in 1998 that her husband had an anger-control problem when it came to the children; yet, she now claims that he does not. Although appellant is currently "in compliance" with the case plan, she did not complete the case plan. In fact, her counselors opine that the counseling she attends is fruitless because she refuses to admit that her children were mistreated by someone and refuses to admit that her husband has anger-control problems.

In awarding permanent custody to the agency, the trial court stated that it found the following by clear and convincing evidence: it is contrary to the children's best interests to be placed in appellant's home; it is in the children's best interests that permanent custody be granted to the agency; the children cannot be placed with either parent and should not be so placed; and both appellant and her husband have failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions which caused the children's removal despite case planning and diligent efforts by the agency.

Pursuant to R.C. 2151.413(A), an agency with temporary custody "may" file a motion requesting permanent custody. However, if the child has been in temporary custody for twelve or more months of a consecutive twenty-two-month period, the agency "shall" file a motion requesting permanent custody. R.C. 2151.413(D)(1). Upon the filing of a motion for permanent custody under R.C. 2151.413, the court must conduct a hearing to determine if it is in the best interests of the child to permanently terminate parental rights and grant permanent custody to the agency. R.C. 2151.414(A)(1) and (2). The child's best interests must be established by clear and convincing evidence. R.C. 2151.414(B)(1). In determining best interests, the court shall consider all relevant factors including those listed in R.C. 2151.414(D).

In granting permanent custody to the agency, R.C. 2151.414(B)(1) states that the court must consider not only the best interests of the child but must also determine by clear and convincing evidence that any of the following apply:

"(a) The child is not abandoned or orphaned or has not been in temporary custody of [an agency] for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

"(b) The child is abandoned.

"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

"(d) *The child has been in temporary custody of [an agency] for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.*" (Emphasis added.)

For the purpose of this section, a child is considered to have entered temporary custody on the earlier of the date of adjudication or sixty days after the child's removal. In this case, the children were removed on September 22, 1998; sixty days from this date is November 22, 1998. The children were adjudicated on November 18, 1998, which is earlier than sixty days after the date of removal and thus is the date used to determine the length of time in temporary custody.

When the agency filed their first motion for permanent custody on April 4, 1999, the children had not yet been in temporary custody for twelve months. Hence, under R.C. 2151.414(B)(1)(a), the court had to find by clear and convincing evidence that the child cannot be placed with either parent within a reasonable time or should not be so placed. To make this determination, the court considered the relevant factors contained in R.C. 2151.415(E). However, because the court did not find this element by clear and convincing evidence, permanent custody was denied and instead temporary custody was extended for six months.

Nonetheless, when the agency filed its second motion for permanent custody, on February 3, 2000, the children had been in temporary custody of the agency for more than the last twelve months. Appellant does not contest that the children were in temporary custody of the agency for more than twelve months straight. Appellant does not argue that the court erred when it found that permanent custody was in the children's best interests.

Appellant basically takes issue with the court's finding that the children cannot or should not be placed with either parent. Appellant focuses the application of R.C. 2151.415(E)(1), which states that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent if the agency engaged in reasonable case planning and the parent continuously and repeatedly failed to substantially remedy the conditions which caused the child's removal.

However, under R.C. 2151.415(B)(1)(d), the court was not required to make this finding in the case at bar. Cf. R.C. 2151.415(B)(1)(a) (which requires such a finding be made when a child is in temporary custody for less than twelve months of a twenty-two-month period). Pursuant to R.C. 2151.415(B)(1)(d), since the children were in temporary custody for more than twelve months, the court was required to find by clear and convincing evidence that permanent custody was in the children's best interests. *In re Morris* (Oct. 16, 2000), Butler App. No. 2000–01–001, unreported, at 3, 2000 WL 1530878; *In re Fox* (Sept. 27, 2000), Wayne App. No. 00CA39–0041, unreported, at 5, 2000 WL 1420276. See, also, *In re Barker* (June 16, 2000), Champaign App. No. 20001, unreported, at 4, 2000 WL 775638. Accordingly, appellant's argument is without merit.

For the foregoing reasons, the trial court's judgment granting legal custody of Courtney and Danni–Jo to their grandmother is affirmed. Additionally, the trial court's judgment granting permanent custody of Adam and Brittany to the agency is affirmed.

*Judgments affirmed.*

GENE DONOFRIO and WAITE, JJ., concur.