[Cite as *In re S.Y.*, 2011-Ohio-4621.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| S.Y., C.F., AND A.F. | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2011AP04 0018 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil appeal from the Tuscarawas County
Court of Common Pleas, Juvenile Division,
Case No. 10JN00568

JUDGMENT:    Dismissed

DATE OF JUDGMENT ENTRY:    September 13, 2011

APPEARANCES:

For: Children
SHARON BUCKLEY-MIRHAIDARI
152 North Broadway
New Philadelphia, OH 44663

KAREN DUMMERMUTH
Guardian Ad Litem
Box 494
New Philadelphia, OH 44663

For: TCJ&FS
DAVID W. HAVERFIELD
389 16th St. S.W.
New Philadelphia, OH 44663

For: Tanika York
JOHN A. GARTRELL
153 North Broadway
New Philadelphia, OH 44663

For: Matthew Frame
SETH W. ARKOW
221 Front Avenue S.W.
New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1} Appellant Tuscarawas County Job & Family Services [(hereinafter "TCJFS"] appeals the April 20, 2011 judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, which removed S.Y. from his grandmother's home and placed him in the temporary custody of the agency. [1]

I. Procedural History

{¶2} The instant action concerns three children of Tanika York. S.Y. is the oldest and is the child of Tanika York and Shane Goins. He is three years old.[2]

{¶3} The instant action was initiated by the filing of a complaint by TCJFS on November 9, 2010, alleging that these children were Abused, Neglected, and Dependent. The basis for said filing occurred when A.F., who was only 3 months old at the time, was treated at Children's Hospital Medical Center in Akron for a skull fracture. Both he and C.F. were with Tanika York. Her explanation of said injuries was not consistent with the observation of medical professionals.

{¶4} At the time of the filing of the complaint, S.Y. was residing with his maternal grandmother, Carla York. He had been residing with his grandmother since April 2010. In August, 2010, Ms. York filed a Grandparent Power of Attorney with the Tuscarawas County Juvenile Court advising that S.Y. was residing with her.[3]

{¶5} By Judgment Entry filed January 5, 2011 all three children were adjudicated Dependent pursuant to RC 2151.04, Neglected pursuant to RC 2151.03

---

[1] No appellee brief has been filed.
[2] C.F. and A.F. are the children of Tanika York and Matthew Frame. These children have remained in the custody of their father during the pendency of this action and are not the subject of the within appeal.
[3] R.C. 3109.74

and Abused pursuant to RC 2151.031. The court ordered S.Y. to remain in the custody of Ms. York pending the dispositional hearing.[4]

{¶6} The dispositional hearing was begun on February 1, 2011. TCJFS presented one witness on that date due to logistical concerns and the number of witnesses.

{¶7} The first witness called by TCJFS was Leslie Chase. Ms. Chase is employed by the Help Me Grow program as a Service Coordinator. She became involved with S.Y. after he was evaluated in June 2010 and recommended for services. All services were set up and accessed by Carla York. Ms. Chase testified that she had no concerns about the home of Ms. York or the care she was providing for S.Y. She went on to indicate that Carla was nurturing, caring, and committed to making sure that S.Y. received the services he needed, and she wished all the families she dealt with were as a committed as Carla York. She further opined that she noted progress for S.Y. while placed in his grandmother's home.

{¶8} The dispositional hearing concluded on February 23, 2011. Shelly Clemence, a teacher at the Starlight School for the past sixteen years testified she has been S.Y.'s teacher since December 2010, which was the earliest time he was old enough to enroll. She noted no behavioral or attendance problems with S.Y., and he was doing well in her class and making gains. Ms. Clemence testified that she made regular visits to the home of Carla York, and she had no concerns with her care or follow through. She further provided information to the court that S.Y. suffered from a significant speech delay and was probably one year behind for his age.

---

[4] A transcript of the adjudicatory hearing held January 4, 2011 was not filed and made a part of the record in this appeal.

{¶9}   Barb Rice, a speech pathologist with a master's degree and over 30 years of experience, testified next.  She had been providing speech therapy to S.Y. since April 2010.  She testified that he had stabilized while at his grandmother's house, and that Carla York was appropriately involved in addressing this issue, including following through on suggestions she made. Ms. Rice further testified that the key to his success was stability and putting his needs first, and that he needed a consistent routine.

{¶10} David Garbrandt a Juvenile Probation Officer for the court testified that he was familiar with Carla York's children, having acted as the probation officer for T.J. York, the eldest child of Carla York.  Mr. Garbrandt testified that his involvement with T. J. consisted of unruly behavior and violation of court orders; there were never any felony charges or aggressive behaviors. Mr. Garbrandt became involved with T.J. in 2004 when he was 14 years of age. Mr. Garbrandt described Carla York as always cooperative, doing what was asked of her and not uncooperative in any regard. He described her response to her son's behavior as ineffective.  She was not doing anything wrong; it just was not impacting his behavior in a positive way.  Mr. Garbrandt testified that T.J. was placed at Rogers Group Home for a period of time after his mother could no longer manage his behavior. This was the one time that she called and requested that he be removed from her home. In fact, he received necessary mental health treatment at that facility that seemed to positively impact his behavior for a period of time after he returned home. Mr. Garbrandt testified that during his involvement, he never had any concerns related to child abuse or neglect that required him to make a report to the agency. However, he expressed his concern about a placement of a young

child into the home of Carla York based upon the delinquent behavior of her own children and her inability to have any impact in changing that behavior.

{¶11} Mr. Jeff Kiggans is an attorney licensed to practice law in Ohio and is employed by TCJFS. Mr. Kiggans was the initial attorney at TCJFS handling this case. He testified that the complaint in this case was filed in November 2010. Mr. Kiggans recalled having some concerns relative to Carla York brought to his attention. He was advised that the court may have concerns about this placement. As a result of the same, he and Cindy McGuire, the agency intake worker contacted David Garbrandt by telephone to discuss this matter. He testified that nothing during their conversation caused him to have concern regarding the placement of the child with Carla York.

{¶12} Mr. Kiggans testified that the child had been placed with Carla York pursuant to a Grandparent Power of Attorney since August 13, 2010. This affidavit was filed with Tuscarawas County Juvenile Court and predated the involvement of the agency. A certified copy of this power of attorney was entered into evidence at the hearing. Mr. Kiggans, a licensed attorney, testified that the power of attorney is authorized by the Ohio Revised Code and, while it does not actually change custody, it does empower a grandparent to enroll a child in school and obtain necessary medical treatment.

{¶13} Elizabeth Benedetto, the ongoing case manager testified that she made regular drop-in visitations at the home of Carla York and had no concerns. Additionally, she was in regular contact with the service providers and was pleased with the information she was receiving. She testified that Carla had been in her current

residence for one year, and that all the bills were being paid. Her paramour, Mr. John Head, was employed and providing adequate income.

**{¶14}** Ms. Benedetto testified that at the early juncture in the case, she believed it too early to make any long-term decisions regarding S.Y.'s placement. Ms. Benedetto also testified that she had reviewed the entirety of the juvenile court history of the children of Carla York. She confirmed that the testimony of Mr. Garbrandt concerning T.J. York was consistent with her review of the same. She further testified that Tanika York, Carla's daughter was charged one time with an unruly charge when Tanika was seventeen years old. The juvenile probation records disclosed that she was progressing satisfactorily and was maintained in her mother's custody.

**{¶15}** Ms. Benedetto testified that she did not share the probation staff's concern with a placement with Carla York. She testified to her concern regarding regression in his behavior and advances he had made while with his grandmother. She expressed concern about this regression, particularly in light of the delays from which this child already suffered.

**{¶16}** Lastly, Ms. Benedetto testified regarding psychological evaluations that the court ordered for both Carla York and her paramour John Head. Copies of the assessments were entered into evidence. As noted in the report, Dr. Anita Exley, the psychologist conducting the assessments, specifically recommended that the child remain with Carla York, noting no particular concern in her assessment or that of Mr. Head

**{¶17}** Ms. Benedetto discussed the history of Children Services involvement with Carla York dating back to 1992. When asked she simply read the dates, the allegations

and the dispositions into the record. (T. at 111). The records from those previous involvements were not entered into evidence or otherwise made a part of the record. She also testified that the history of Carla York was indeed relevant to an assessment of her home. However, given the positive changes she has made and how well S.Y. was doing in her home, she believed that the same significantly overcame her history.

{¶18} The report of the Guardian Ad Litem [hereinafter "GAL"] was file with the Court on February 1, 2011. This report likewise summarily discusses various cases filed against Carla York or her children dating back as far as 1992. The GAL concludes that Carla York has been able to put S.Y.'s needs first for the past year and S.Y. is progressing as a result.

{¶19} By judgment entry dated April 20, 2011, the juvenile court removed S.Y. from his grandmother's home and placed him in the temporary custody of the agency.

{¶20} It is from this entry that TCJFS has appealed.

II. Assignments of Error

{¶21} On appeal, TCJFS asserts the following assignments of error:

{¶22} "I. THE TRIAL COURT IMPROPERLY CONSIDERED EVIDENCE THAT WAS NOT PART OF THE RECORD BELOW IN REACHING ITS CONCLUSION TO REMOVE S.Y. FROM THE TEMPORARY CUSTODY OF HIS GRANDMOTHER. THE TRIAL COURT'S CONSIDERATION OF EVIDENCE OUTSIDE THE RECORD DEPRIVED THE AGENCY OF PROCEDURAL DUE PROCESS AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

{¶23} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN REMOVING S.Y. FROM THE TEMPORARY CUSTODY OF HIS GRANDMOTHER AT THE DISPOSITIONAL HEARING."

A. Burden of Proof.

{¶24} In the case at bar, appellant, the parents and the grandmother did not appeal the trial court's finding at the adjudicatory phase that S.Y. is a Dependant, Neglected or Abused child.

{¶25} After a child has been adjudicated as dependent neglected or abused, the trial court can make an order of disposition as set forth in R.C. 2151.353(A).

{¶26} R.C. 2151.353(A) states in pertinent part that, "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶27} "(1) Place the child in protective supervision;

{¶28} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;

{¶29} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;

{¶30} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency* * *."

**{¶31}** "A juvenile court must consider the 'best interests' of the child when it considers the statutorily permissible dispositional alternatives enumerated in R.C. 2151.353(A)." *In the matter of: Jacob, Nicholas, Neil, and Clair Barcelo* (June 26, 1998) Geauga App. No 97-G-2095, citing *In re Cunningham* (1979), 59 Ohio St.2d 100, 107, 391 N.E.2d 1034. See also, *In re Brown* (2001), 142 Ohio App.3d 193, 755 N.E.2d 365; *In re Pryor* (1993), 86 Ohio App.3d 327, 620 N.E.2d 973.

**{¶32}** Once the juvenile court adjudicates a child dependent, the court may award legal custody of the child to a parent or to a non-parent upon a timely motion. See R.C. 2151.353(A)(3). In doing so, the juvenile court shall consider the best interest of the child. R.C. 2151.42(A). This procedure does not constitute a "termination of all residual parental rights, privileges, and responsibilities," and therefore, does not foreclose the ability of the parents or the appellant to seek a change of custody in the future, in accordance with R.C. 2151.42. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191 at ¶ 23.

**{¶33}** R.C. 2151.353(E)(2) allows any party, other than the parents whose parental rights have been terminated, to move for an order modifying or terminating any dispositional order, including an award of temporary or permanent custody. The statute provides:

**{¶34}** "Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to

division (A) of this section or section 2151.414 [2151.41.4] or 2151.415 [2151.41.5] of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code.

{¶35} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, a juvenile court's standard of review in legal custody proceedings is by a preponderance of the evidence. *Id.; In re Nice* (2001), 141 Ohio App.3d 445, 455; *In re A. W.-G.* A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *In re Nice* (2001), 141 Ohio App.3d 445, 455; *In re Law*, Tuscarawas App. No. 2003 AP 06 45, 2004-Ohio-117 at ¶14. If the court's decision regarding legal custody is not supported by competent, credible evidence, then it is unreasonable and we may reverse it. *Nice,* 141 Ohio App. 3d at 455, 751 N.E. 2d 552; *In re Law*, 2004-Ohio-117 at ¶14.

{¶36} Grandparents generally have no legal rights of access to their grandchildren. *In re Fusik,* Athens App.No. 02CA16, *2002-Ohio-4410,* citing *In re Whitaker* (1988), 36 Ohio St.3d 213, 214, 522 N.E.2d 563; *In re Martin,* 68 Ohio St.3d 250, 1994-Ohio-506. Additionally, the Ohio Supreme Court has stated that grandparents have no constitutional right of association with their grandchildren. See *In re Schmidt* (1986), 25 Ohio St.3d 331, 336, 496 N.E.2d 952. Nonetheless, the General Assembly has provided dispositional options which impact the role of grandparents in dependency, neglect, and abuse cases. Among these are R.C. 2151.415(A)(3), which

permits a grant of legal custody to a relative, and R.C. 2151.415(F), which permits a parent to file a motion seeking relative placement of the child.

**{¶37}** In the case at bar, the grandmother did not file a motion seeking legal custody of S.Y. Nor did the parents file a motion seeking relative placement. However, as a preliminary matter the question in this appeal is not whether grandmother had a right to custody of S.Y. but rather whether TCJFS may assert the grandmother's rights.

B. Standing.

**{¶38}** In its two assignments of error TCJFS argues that the trial court considered evidence outside the record and abused its discretion by removing S.Y. from his grandmother's custody. Prior to considering the merits of appellant's assignments of error, we find it necessary to address the issue of standing (i.e. whether appellant, TCJFS, has standing to challenge the trial court's denial of temporary custody to the grandmother, Carla York.)

**{¶39}** Carla York filed a grandparent power of attorney with the juvenile division of common pleas court pursuant to R.C. 3109.52, which provides,

**{¶40}** "The parent, guardian, or custodian of a child may create a power of attorney that grants to a grandparent of the child with whom the child is residing any of the parent's, guardian's, or custodian's rights and responsibilities regarding the care, physical custody, and control of the child, including the ability to enroll the child in school, to obtain from the school district educational and behavioral information about the child, to consent to all school-related matters regarding the child, and to consent to medical, psychological, or dental treatment for the child. The power of attorney may not grant authority to consent to the marriage or adoption of the child. *The power of attorney*

*does not affect the rights of the parent, guardian, or custodian of the child in any future proceeding concerning custody of the child or the allocation of parental rights and responsibilities for the care of the child and does not grant legal custody to the attorney in fact.*" (Emphasis added).

**{¶41}** Accordingly, this power of attorney did not grant Carla York legal custody of S.Y. Nor did the power of attorney constitute a request for custody. In this respect we note that R.C. 3109.77 expressly authorizes a trial court to treat a *subsequent* request for a grandparent power of attorney as a petition for legal custody. *In re B.R*, Cuyahoga App. No. 94099, 2010-Ohio-3092. That statute provides in relevant part:

**{¶42}** ""(A) On the filing of a power of attorney or caretaker authorization affidavit under section 3109.76 of the Revised Code[5], the court in which the power of attorney or caretaker authorization affidavit was filed shall schedule a hearing to determine whether the power of attorney or affidavit is in the child's best interest.* * *

**{¶43}** " * * *

**{¶44}** "(C) At the conclusion of the hearing, the court may take any of the following actions that the court determines is *in the child's best interest:*

**{¶45}** "(1) Approve the power of attorney or affidavit. If approved, the power of attorney or affidavit shall remain in effect unless otherwise terminated under section 3109.59 of the Revised Code with respect to a power of attorney or section 3109.70 of the Revised Code with respect to an affidavit.

**{¶46}** "(2) Issue an order terminating the power of attorney or affidavit and ordering the child returned to the child's parent, guardian, or custodian. If the parent, guardian, or custodian of the child cannot be located, the court shall treat the filing of

---

[5] R.C. 3109.76 governs "second or subsequent power of attorney" created under R.C. 3109.52

the power of attorney or affidavit with the court as a complaint under section 2151.27 of the Revised Code that the child is a dependent child.

**{¶47}** "(3) *Treat the filing of the power of attorney or affidavit as a petition for legal custody and award legal custody of the child to the grandparent designated as the attorney in fact under the power of attorney or to the grandparent who executed the affidavit.*" (Emphasis added.)

**{¶48}** The express language of R.C. 3109.77(C)(3) therefore allows the court to treat a second power of attorney as a petition for legal custody. *In re B.R.* supra at ¶26. However, because that express language is not contained in R.C. 3109.52 an initial grandparent power of attorney cannot be treated by the trial court as a petition for legal custody.

**{¶49}** "Appeal lies only on behalf of a party aggrieved by the final order appealed from. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant." *Ohio Contract Carriers Assn. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus; *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1992), 65 Ohio St.3d 438, 439, 605 N.E.2d 13, 14. An appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appellant. *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, 52.  In *In re Rackley* (Apr. 8, 1998), Summit App. No. 18614, the court stated "an appellant may not challenge an alleged error committed against a non-appealing party absent a showing that she herself has been prejudiced by the alleged error."  See, also, *State v. Ward* (Sept. 21,

1988), Summit App. No. 13462, unreported; *In re Matis* (May 24, 1995), Summit App. No. 16961. *In re Leo D.* supra.

**{¶50}** In the case of *In re Pittman,* Summit App. No. 20894, 2002-Ohio-2208, at ¶ 70, the Ninth District Court of Appeals explained that:

**{¶51}** " * * * [A] parent has standing to challenge the juvenile court's failure to grant a motion for legal custody of a child to a relative, where the court's denial of that motion led to a grant of permanent custody to the children services agency and impacted the residual rights of the parent. [Citations omitted.] However, the parent is limited to challenging only how the court's decision impacted the parent's rights and not the rights of the relative. A parent has no standing to assert that the court abused its discretion by failing to give * * * [a family member] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper."

**{¶52}** We note that neither of the parents has appealed the trial court's adjudication or disposition of S.Y. Additionally, the maternal grandmother did not file a motion for custody of S.Y. We further note that from the record before this court we are unable to determine whether the maternal grandmother, Carla York, was even present during the dispositional hearings that took place in the trial court on February 1, 2011[6] and February 23, 2011.[7]

**{¶53}** In the case art bar, the trial court awarded temporary custody of S.Y. to TCJFS. TCJFS has made no showing that the trial court's decision adversely impacted TCJFS rights or that they were prejudiced by the trial court's award of temporary custody to them and the denial of temporary custody to the maternal grandmother.

---

[6] See, T. at 1-3.
[7] See, T. at 18-19.

**{¶54}** Therefore under the facts and circumstances of this case we find that TCJFS does not have standing to assert on appeal that the trial court erred in not granting temporary custody of S.Y. to his maternal grandmother Carla York with protective supervision to TCJFS.

**{¶55}** For the foregoing reasons, appellant's appeal is dismissed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur

 

 

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE

WSG:clw 0823

[Cite as *In re S.Y.*, 2011-Ohio-4621.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
S.Y., C.F., AND A.F.     :
              :
              :
              :
              :
              :
              :   JUDGMENT ENTRY
              :
              :
              :
              :   CASE NO. 2011AP04 0018

For the reasons stated in our accompanying Memorandum-Opinion, this appeal is dismissed . Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE