[Cite as *In re D.F.*, 2022-Ohio-4494.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| D.F. | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| A DEPENDENT CHILD | : | |
| | : | |
| | : | Case No. 22-COA-020 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County
Court of Common Pleas, Juvenile
Division, Case No. 20193036

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     December 13, 2022

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

BRIAN A. SMITH                         CHRISTOPHER R. TUNNELL
Brian A. Smith Law Firm, LLC          Ashland County Prosecutor
755 White Pond Drive, Suite 403
Akron, Ohio 44320                      By: BETH A. LIGGETT
                                       Assistant Prosecuting Attorney
                                       110 Cottage Street, Third Floor
                                       Ashland, Ohio 44805

*Baldwin, J.*

{¶1}    Appellant P.F. appeals from the May 16, 2022 Decision Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, denying the request filed by appellee for legal custody of D.F. to be returned to him.

### STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant P.F. is the biological father of D.F. (DOB 9/23/15) A.C. is D.F.'s mother. On August 2, 2019, a complaint was filed in the Ashland County Court of Common Pleas, Juvenile Division, alleging that D.F. was a dependent child. The complaint alleged that D.F. and his siblings were found to be residing in deplorable, unsafe and unsanitary home conditions. A shelter care hearing was held on August 2, 2019. The trial court, pursuant to a Judgment Entry filed on August 14, 2019, ordered that D.F. and P.F.'s other three children be placed into the temporary custody of appellee Ashland County Department of Job and Family Services. On September 6, 2019, Maria and William Humphreys filed a Motion for Change of Parental Rights and Responsibilities regarding D.F.

{¶3}    Following an adjudicatory hearing before a Magistrate on September 23, 2019, D.F. was found to be a dependent child and temporary legal custody was continued with appellee.

{¶4}    On July 13, 2021, appellee filed a Motion to Modify Disposition, asking, in part, the trial court to return D.F. to the legal custody of A.C., his mother, with a Protective Supervision Order. At the time, appellant and A.C. resided together. A hearing on the motion was held on December 29, 2021.

{¶5}   There was testimony that following removal of D.F. and his placement into the agency's temporary custody, the agency initiated a case plan with the goal of family reunification. Appellant's case plan objectives included parenting education and following all recommendations, attending scheduled appointments, cooperating with the agency.

{¶6}   At the hearing, William Weberling, an adult mental health therapist with Appleseed Community Mental Health Center, testified that he provided counseling to appellant P.F. He testified that appellant regularly attended both his counseling and his psychiatric appointments and was making good progress in learning how to assertively communicate his feelings, thoughts and desires to others in respectful ways.  Weberling testified that he did not have any concerns if the Court were to reunite appellant with his children, including D.F., and that appellant had the necessary skills to be an effective parent.  On cross-examination, Weberling testified that appellant had been diagnosed with bipolar disorder and long-term therapeutic drug use.

{¶7}   Luke Honaker, a caseworker with Ashland County Department of Job and Family Services, testified that he was assigned to the children in this case. He testified that D.F. was currently placed with Maria Humphreys. Honaker testified that appellant had completed parent education and was currently receiving counseling. He testified that he had a chance to see and take photos of appellant's home. When asked, he testified that he did not observe any hazards and that there was clutter "here and there, but nothing, nothing  that raises concern." Transcript of December 29, 2021 hearing at 45. He testified that he had no concerns with placing D.F. in the home.  Honaker testified that he did not see any reason, based on the conditions of the home, that would prevent reunification of D.F. with the family.

{¶8} Honaker testified that he had no knowledge of any medical issues for D.F. He testified that D.F. had ADHD and was receiving proper medication for it and that D.F.'s needs were adequately being met. He had no concerns that D.F.'s needs would not be met if D.F. were placed back in the home with appellant and A.C. Honaker testified that D.F. was receiving weekly occupational therapy. When asked, he testified that he believed that, upon reunification, D.F.'s parents would be able to meet that need. He testified that D.F. had unsupervised visitation on Saturdays and that the agency wanted to transition D.F. to overnight visits on the weekend. Honaker further testified that appellant and C.S. were "very compliant" with case plan services. Transcript of December 29, 1961 hearing at 50. The following is an excerpt from his testimony at the hearing:

{¶9} Q. Okay. And is there anything that the Department has asked of them to rectify concerns that they have not done?

{¶10} A. Um, no, not to my knowledge.

{¶11} Q. Does the Department have any concerns at this time as it pertains to reunifying Dean and returning legal custody to the parents of these children, to [appellant] of the older children and to [A.C.] of(sic) [appellant]?

{¶12} A. No, ah, no concerns.

{¶13} Q. Okay. Is there, does the Department, the Motion that the Department filed specifically requested for a Protective Supervision Order, could you please help the Court understand how that would benefit this family?

{¶14} A. It would benefit the family so we could continue to monitor the progress to make sure that they, that they are complying with what we have asked.

**{¶15}** Q. Okay. And do you think that a Protective Supervision Order would be beneficial as it pertains to [D.F.]?

**{¶16}** A. Yes, I do.

**{¶17}** Q. Can you explain what specifically for [D.F.] why that would be beneficial?

**{¶18}** A. Um, it can help us to, um, make sure that Dean is receiving the proper case that he needs.

**{¶19}** Q. Okay. Is there anything that I haven't asked you that you think could help the Court in making their decision today?

**{¶20}** A. No, nothing else that I can think.

**{¶21}** Transcript of December 29, 2021 hearing at 50-51.

**{¶22}** On cross-examination, Honaker testified that the problem of appellant having a dirty home had been rectified and that he did not have any concerns about the home returning to its prior state.  He further testified that the home appeared to be appropriate and safe for D.F. Honaker was asked about D.F. being on a feeding tube. He testified that as far as he knew, D.F.'s feeding issues had been resolved although he stated that he was not very familiar with the situation or with any health issues for which D.F. needed specialized care or attention from any caregiver. On cross-examination, he testified that he had visited appellant's home twice and that both visits were announced in advance. He testified that D.F.'s room was a little bit cluttered. He admitted that he did not have much knowledge of D.F.'s medical issues and that he was not aware of any. He was unaware that D.F. saw a heart specialist, a neurologist and an eye doctor for his lazy eye and other doctors. Honaker testified that he wanted a protective supervision order to

make sure that appellant and A.C. were compliant and did not revert back and to make sure that D.F. received proper care.

**{¶23}** At the conclusion of the hearing, the Guardian ad Litem stated that he did not believe that it was in D.F.'s best interest to be returned home.  The Guardian ad Litem stated, in relevant part, as follows:

**{¶24}** THE COURT: Thank you, Mr. Kearns. Mr. Hunter, anything else you would like me to know, in addition to your report?

**{¶25}** MR. HUNTER: Your Honor, I'd just say that I don't share the same confidence that the Department shares with regard to the home conditions.  I don't think they will remain as they saw, as Mr. Honaker saw on the 27th.  I believe they'll be right back, they're probably already right back to the way, the way they were right after he left. As to [D.F.], I, I just don't' believe it's in the best interest of that young child, he's been with his current placement for probably 90 percent of his life and from what I've observed, there's no bond between he and his parents.  He, he still has health concerns that apparently Mr. Honaker is not aware of and nobody's ensured that [A.C.] or [appellant] have been involved in those appointments to see what's going on with that young child that, that is, that's concerning to me that they want to just place the child back in the home when the parent's don't even know what's going on.

**{¶26}** Transcript of December 29, 2021 hearing at 88-89.

**{¶27}** The trial court, pursuant to a Decision and Judgment Entry filed on May 16, 2022, denied the agency's request to return D.F. to the legal custody of either appellant or C.S. An Amended Decision and Judgment Entry with the same ruling was filed on May 25, 2022.

{¶28} Appellant now appeals, raising the following assignment of error on appeal:

{¶29} "I. THE TRIAL COURT'S DECISION DENYING APPELLEE'S MOTION TO MODIFY DISPOSITION, AND RETURN CUSTODY OF D.F. TO FATHER, WAS AN ABUSE OF DISCRETION."

I

{¶30} Appellant, in his sole assignment of error, argues that the trial court abused its discretion when it denied appellee's Motion to Modify Disposition and declined to return custody of D.F. to appellant. We disagree.

{¶31} As an initial matter, we note that the parties agree that appellant has standing. In *Iden v. Zumbro,* 5th Dist. Licking No. 18-CA-56, 2019-Ohio-1051, ¶ 9, this court explained the following on the issue of standing:

> Standing is "a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court - even a court of competent subject-matter jurisdiction - over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22. A "determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in order to establish standing." *Kuchta* at ¶ 23, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27.

{¶32} In order to have standing to appeal his son's case, appellant must demonstrate that he himself suffered prejudice as a result of the complained of errors. *Id.* at 11.

**{¶33}** In the case of *In re Pittman,* Summit App. No. 20894, 2002–Ohio–2208, at ¶ 70, the Ninth District Court of Appeals explained that:

" * * * [A] parent has standing to challenge the juvenile court's failure to grant a motion for legal custody of a child to a relative, where the court's denial of that motion led to a grant of permanent custody to the children services agency and impacted the residual rights of the parent. [Citations omitted.] However, the parent is limited to challenging only how the court's decision impacted the parent's rights and not the rights of the relative. A parent has no standing to assert that the court abused its discretion by failing to give * * * [a family member] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper."

*In re S.Y.*, 2011-Ohio-4621, ¶¶ 50-51.

**{¶34}** As noted by appellee, although there has not been a grant of permanent custody, the trial court's decision directly impacted appellant's parental rights by denying the return of D.F., a minor, to his care. Appellant and D.F.'s mother were living in the same household.

**{¶35}** R.C. 2151.353(A)(3) states the following in pertinent part:

**{¶36}** (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

**{¶37}** (1) Place the child in protective supervision;

**{¶38}** (2) Commit the child to the temporary custody of any of the following:

**{¶39}** (a) A public children services agency;

**{¶40}** (b) A private child placing agency;

**{¶41}** (c) Either parent;

**{¶42}** (d) A relative residing within or outside the state;

**{¶43}** (e) A probation officer for placement in a certified foster home;

**{¶44}** (f) Any other person approved by the court.

**{¶45}** (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

**{¶46}** (a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

**{¶47}** (b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond

the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

{¶48} (c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

{¶49} (d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

{¶50} We agree with the following analysis set forth by our colleagues from the Eighth District in *In re D.T.,* 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 19-22:

> Legal custody is significantly different than the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.,* 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.* [8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674] at ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455, 751

N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.,* 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest in a motion for legal custody. *In re G.M.* at ¶ 15. We must presume that, in the absence of best interest factors in a legal custody case, "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *Id.* at ¶ 16. Such factors, however, are instructive when making a determination as to the child's best interest. *In re E.A.* [8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193] at ¶ 13.

The best interest factors include, for example, the interaction of the child with the child's parents, relatives, and caregivers; the custodial history of the child; the child's need for a legally secure permanent placement; and whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home. R.C. 2151.414(D).

Because custody determinations " 'are some of the most difficult and agonizing decisions a trial judge must make,' " a trial judge must have broad discretion in considering all of the evidence. *In re E.A.* at ¶ 10, quoting *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159

(1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Accord, In re L.D.,* 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214; *Stull v. Richland County Children Services,* 5th Dist. Richland Nos. 11CA47 and 11CA48, 2012-Ohio-738.

**{¶51}** The trial court, as the trier of fact here, determines the weight and credibility of the evidence. *Seasons Coal Company, Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 1993-Ohio-122, 614 N.E.2d 748.

**{¶52}** Upon our review of the record, we cannot say that the trial court abused its discretion in denying appellant's request for legal custody of D.F. The trial court, in its decision, found that appellee had not sustained its burden of proof to establish that granting the Motion to Modify and returning D.F. to the legal custody of his mother, C.S., or appellant was in his best interest. The trial court noted that D.F. had been removed from his parents on a previous occasion and placed with the Humphreys and that he did well with them. The court noted that D.F. was returned to his mother and that when he was removed in the case sub judice, he was placed in a different foster home before being quickly moved back into the Humphreys' home where he had lived ever since. According to the trial court, D.F. had lived with them almost 90% of his life, was integrated into their family and doing well in the home, and considered them his parents.

{¶53} The trial court also noted that D.F. had suffered from cognitive and developmental delays and had previously been removed for medical neglect. His many issues had been addressed by the Humphreys and not by his parents who lived together. The trial court, in its amended decision, further stated, in relevant part, as follows:

{¶54} 22.  These cases commenced because of deplorable home conditions.  The current caseworker believes the home conditions are improved and do not pose a hazard. However, the Guardian Ad Litem has been to the home and he state's "without doubt" that [appellant] and [A.C.] are not maintaining a clean home. His description supports a finding that the conditions are deteriorating and moving back towards the original issues. The Guardian Ad Litem has extensive experiences and the Court finds his report far more credible than the testimony of the caseworker.

{¶55} 23. In addition, [appellant] and [A.C.] Casey are having relationship issues and [appellant] reported that he may be moving another woman into the home.

{¶56} 24. The children cannot be expected to thrive in such a chaotic environment.

{¶57} The court also indicated that the Guardian ad Litem had opposed a return of D.F. to the custody of his mother. While appellant argues that the testimony of the caseworker, which was more favorable to appellant, was more credible than the Guardian ad Litem, we note that the trial court, as trier of fact, was in the best position to assess the credibility of the witnesses.

{¶58} We find, based on our review of the record, that the trial court did not abuse its discretion in finding that it was not in D.F.'s best interest to be returned to the legal custody of his mother or to be placed into the temporary or legal custody of appellant.

The trial court's decision denying the Motion to Modify as to D.F. was not arbitrary, unconscionable or unreasonable.

**{¶59}** Appellant's sole assignment of error is, therefore, overruled.

**{¶60}** Accordingly, the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Wise, John, J. concur.